**William S. GRODINSKY, et al.**

v.

**FAIRCHILD INDUSTRIES, INC.**

Civ. A. Nos. M–80–722 to M–80–728 and M–79–2330.

United States District Court, D. Maryland.

Feb. 3, 1981.

Evans W. North, Washington, D. C. and J. Willard Nalls, Jr., Bethesda, Md., for plaintiff.

James L. Shea and Charles Iliff, Jr., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This litigation arose out of the crash of Quebecaire flight # 255 at Ancienne Lorette Airport in Quebec, Canada, on March 29, 1979. The plaintiff in Civil Action No. M–79–2330 (the *Proulx* case) is the representative of the estate of a deceased passenger. The plaintiffs in Civil Action Nos. M–80–722 through M–80–728, are passengers who were allegedly injured in the same airplane crash. All plaintiffs are subjects of the Dominion of Canada and reside in that country. Defendant Fairchild Industries, Inc. (Fairchild), is a Delaware corporation with its principal place of business in Maryland.

The F–27 aircraft involved in the crash was manufactured, partially redesigned, and tested at Fairchild's place of business in Maryland. The aircraft was delivered to Quebecaire on September 17, 1958, at Hagerstown, Maryland, and was equipped with Dart-6 engines manufactured by Rolls Royce (Canada), Ltd., an English corporation operating in Quebec. Plaintiffs sue under theories of negligence, breach of express and implied warranties, and strict liability. Neither Quebecaire nor Rolls Royce (Canada), Ltd., have been named as defendants in the actions pending in this court.

### I. History of the Case

The *Proulx* case, Civil Action No. M–79–2330, was originally filed in the United States District Court for the Eastern District of New York as 79 Civ. 1890, on July 23, 1979 (Paper No. 2). Subsequently,

plaintiff sought to have *Proulx* consolidated with *Cavagnaro v. Fairchild Industries, Inc.*, 79 Civ. 1889, an action involving the same airplane crash brought by a resident of New York on behalf of a deceased passenger (Paper No. 6).

Defendant, in *Proulx*, 79 Civ. 1890, filed a motion to dismiss on the ground of *forum non conveniens* (Paper No. 5). Plaintiff opposed that motion contending that *Proulx*, 79 Civ. 1890, should be tried in New York with the *Cavagnaro* case. Plaintiff also suggested that if the court found Maryland to be a more appropriate forum than New York, the case could be transferred to the District of Maryland rather than dismissed. (Paper No. 7).

A hearing on defendant's motion to dismiss was held before Judge Charles P. Sifton on October 26, 1979 (Paper No. 9). Plaintiff's motion to consolidate *Proulx*, 79 Civ. 1890, with *Cavagnaro*, 79 Civ. 1889, was not considered because the latter case had been settled. As to defendant's motion to dismiss on the ground of *forum non conveniens*, Judge Sifton ruled as follows:

"I find New York is not the proper forum for this law suit, and that neither the private interest of the litigants or the public interest favor its being retained here. But at the same time I find it inappropriate at this stage to dismiss in favor of prosecution of law suit in Quebec, and I do that after looking at the large number of factors that have been presented to me.

Among those factors are the choice of the plaintiff. *Of course, the choice of the plaintiff initially was not Maryland but it was for litigation in this country and the choice was, I find, not on its face designed to harass the defendant.* The law suit was combined with another law suit being handled by the same law firm in' this District in which the plaintiffs were New York citizens seeking relief from New York courts and New York juries.

I also take into account the rights which undoubtedly the Canadian plaintiffs, as they are entitled to, undoubtedly have in mind in seeking relief in this country, that is, the right to pursue punitive damages, if they are appropriate, and the right to a jury trial, if that is appropriate.

At the same time it bears noting that going to Maryland the jury which they are invoking is a jury of citizens who have undoubtedly some interest, which one might feel might favor the defendants.

*The fact that the cause of action as it is outlined at this initial stage of litigation appears to be an action arising out of product liability, and that the records with regard to the design and the other issues which go into a product liability case strictly viewed are in Maryland is also a fact that I take into account.*

Combining those factors in what appears to me to be a close case, even recognizing the rule of *Gilbert*, that the plaintiff's choice of forum is to be respected unless the factors weigh heavily against it, I think here they do weigh heavily against the choice of New York, and it points to Maryland as the next best solution.

As I say, however, the matter is sufficiently close so that it bears re-examining in the light of what I take will be the Maryland Court's better view of its own interest, and accordingly I will dismiss without prejudice of the renewal of the application in Maryland."

Paper No. 9, at 15–17 (emphasis supplied).

In accordance with his ruling, Judge Sifton, pursuant to 28 U.S.C. § 1404(a), ordered *Proulx*, 79 Civ. 1890, to be transferred to the District of Maryland, without prejudice to defendant's right to renew its *forum non conveniens* motion. (Paper Nos. 10 & 11).

After the *Proulx* case was docketed in this District, seven passengers allegedly injured in the Quebecaire crash filed complaints in this Court, *see* Civil Action Nos. M–80–722 through M–80–728. Fairchild then filed a motion to consolidate all cases involving the crash (Paper No. 30), which was granted by Order dated July 2, 1980

**1248**

(Paper No. 38).[1] These consolidated cases are now before the court on Fairchild's motion to dismiss for *forum non conveniens* (Paper No. 3).

Before examining the merits of Fairchild's motion, the court is constrained to address plaintiffs' preliminary objections to this court's entertaining defendant's motion. Plaintiffs first contend that the transferor court exceeded its authority by allowing Fairchild to renew in this court its motion to dismiss after transferring the *Proulx* case, 79 Civ. 1890, pursuant to 28 U.S.C. § 1404(a). Plaintiffs' second contention is that once a case has been transferred under section 1404(a), "the law of the case is established" such that the transferee court may not dismiss for *forum non conveniens*. Both contentions are without merit.

 A section 1404(a) transfer order is not reviewable by the transferee court. *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir.1974). See *Preston Corp. v. Raese*, 335 F.2d 827, 828 (4th Cir. 1964). This court, therefore, is not at liberty to question directly the propriety of Judge Sifton's decision. On the other hand, a transfer order pursuant to section 1404(a) has no *res judicata* effect. *Hoffman v. Blaski*, 363 U.S. 335, 340 n. 9, 80 S.Ct. 1084, 1088 n. 9, 4 L.Ed.2d 1254 (1960). Consequently, this court may make an independent determination as to whether this action should proceed in this District. See *Buhl v. Jeffes*, 435 F.Supp. 1149, 1151–52 (M.D.Pa.1977); *Central GMC, Inc. v. E.T. & T. Leasing, Inc.*, 371 F.Supp. 437, 438 (D.Md.1974). The timing of a *forum non conveniens* motion rests in the sound discretion of the district court. *Snam Progetti S.P.A. v. Lauro Lines*, 387 F.Supp. 322, 323 (S.D.N.Y.1974), and Fairchild cannot be said to have waived its right so to move in this District. Fairchild advocated dismissal, rather than transfer, while the case was pending in the Eastern District of New York. *Cf. Insurance Company of North America v. Ozean/Stinnes-Linien*, 367 F.2d 224, 226–27

(5th Cir. 1966) (party who had moved successfully in Louisiana for a transfer cannot, after transfer to Georgia, move for the first time for dismissal). The approach advocated by plaintiffs would bar a court from ever dismissing or retransferring a case once an initial section 1404(a) transfer had been ordered. This would defeat the equitable purposes underlying these rules.

## II. The Forum Non Conveniens Analysis

The common law doctrine of *forum non conveniens* has enjoyed limited application in the federal courts subsequent to the enactment of section 1404(a) in 1948. The doctrine has retained vitality, however, primarily when the "more convenient forum" is a foreign country, rather than another federal district. See, e. g., *Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2d Cir. 1978); *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 899 (3d Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978); *Yerostathis v. A. Luisi, Ltd.*, 380 F.2d 377, 379 (9th Cir. 1967). See also *Poe v. Marquette Cement Mfg. Co.*, 376 F.Supp. 1054, 1060 (D.Md.1974) (doctrine also applicable where only alternative forum is state court).

 Numerous federal cases have discussed the doctrine of *forum non conveniens* under factual circumstances similar to those presented in this case. See, e. g. *Dahl v. United Technologies Corp.*, 632 F.2d 1027, 15 Aviation Cas. 18, 352 (CCH) (3d Cir., 1980); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980); *Michell v. General Motors Corp.*, 439 F.Supp. 24 (N.D.Ohio 1977); *Del Rio v. Ballenger Corp.*, 391 F.Supp. 1002 (D.S.C.1975). All analyses, however, center upon the Supreme Court's seminal pronouncement in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In that case the Court recognized that federal district courts have inherent power to dismiss a suit pursuant to the doctrine of *forum non conveniens*. 330 U.S. at 504–05, 67 S.Ct. at 840–41. Although the need to exercise this power has diminished consider-

---

1. This Order instructed that all future pleadings be filed in Civil Action No. M–80–722. There-

fore, all papers hereinafter cited are docketed in that case.

ably since the enactment of section 1404(a), it nevertheless remains a viable remedy in the appropriate case. Accordingly, when there exists an alternative forum and transfer under section 1404(a) is not an option, the district court may dismiss for *forum non conveniens* if the defendant has carried its burden under *Gulf Oil.*[2]

Writing for the majority in *Gulf Oil,* Justice Jackson identified two classes of interests to be considered—the private interests of the litigants and those of the public:

"An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding

the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

330 U.S. at 508–09, 67 S.Ct. at 843.

■ After examining the facts of this case in light of the *Gulf Oil* criteria, the court concludes that this case should be dismissed conditionally, and that the parties should resolve in Canada the issues arising out of the Quebecaire crash.

### A. The Private Interests

Although plaintiffs' original forum choice was the Eastern District of New York, as Judge Sifton pointed out, their choice was also "for litigation in this country and the choice was . . . not on its face designed to harass the defendant." Therefore, unless the balance of interests strongly favors the defendant, plaintiffs' choice of a United States forum should not be disturbed. *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843.

Plaintiffs maintain that this action is essentially a product liability case. Consequently, "the primary issue to be tried . . . relates to a product defect [in the landing gear] of the F–27." (Paper No. 9, at 5). According to plaintiffs, all documents relating to the design defect are located in the United States, and primarily in Maryland. They also note that the design changes were made at Fairchild's place of business in Maryland, and that the redesigned landing gear was certified by Federal Aviation Administration (FAA) personnel in New York. Plaintiffs further contend that any

---

**2.** Although the Supreme Court has not decided the issue of whether, under *Erie,* federal or state law of *forum non conveniens* applies in a diversity case, *see Gulf Oil Corp. v. Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843; *Koster v. Lumber-* *mans Mutual Casualty Co.,* 330 U.S. 518, 529, 67 S.Ct. 828, 834, 91 L.Ed. 1067 (1947), this court agrees with Judge Harvey's conclusion *in Poe v. Marquette Cement Mfg. Co.,* 376 F.Supp. at 1060, that federal law controls.

evidence located in Canada does not relate directly to their product liability claim, and that they are not seeking to impose liability on either Quebecaire or Rolls Royce (Canada), Ltd. in this forum.

Plaintiffs also contend that all essential witnesses concerning the product liability claim, including present and former Fairchild employees and FAA certification personnel, reside in the United States and cannot be compelled to testify in Canada (Paper No. 9, at 5–6). Finally, plaintiffs assert that if Fairchild's motion is granted, the case will not come to trial in Canada for three to four years (Paper No. 9, at 13).

In support of its motion to dismiss, Fairchild notes that Canada was the scene of the crash, and contends that all evidence relating to the issue of liability, except for its own records, is located in Canada (Paper No. 3, at 4–5). However, Fairchild has offered to make available to plaintiffs in Canada all of its records relevant to the liability issue, as well as its employees (Paper No. 3, at 5). Additionally, Canada is already the site of proceedings concerning the crash, including suits brought by the instant plaintiffs against Quebecaire and Rolls Royce (Canada), Ltd.[3] (Paper No. 11, Ex. I, at 7–9; Paper No. 12). Fairchild asserts that it would be unfair to allow proceedings in Maryland because it would be unable to show the fault of the other parties. Moreover, with concurrent proceedings, there is a substantial risk of inconsistent results and additional actions for contribution and indemnity.

It is apparent that nearly all of the events relevant to this action occurred outside of the District of Maryland. The only connection with this forum is that the aircraft was manufactured and partially redesigned here some twenty years ago. The contacts with Canada, however, are substantial. The crash involved a Canadian owned and operated aircraft over Canadian territory (Paper No. 11, Ex. II). The aircraft had been maintained by Quebecaire and an engine overhaul had recently been conducted by Rolls Royce (Canada), Ltd. (Paper No. 3, Ex. I). The accident site and the wreckage are located in Canada, and the Canadian Aviation Safety Bureau conducted an intensive investigation (Paper No. 9, Appendix A). Additionally, testimony from a number of Canadian witnesses, as well as documents and reports, will be in French (Paper No. 11, Ex. I, at 13 & Annex A; Ex. II, at ¶ 11). Neither plaintiffs nor defendants could compel Canadian witnesses to appear in this District, and they could not use the subpoena power of this court to bring in Canadian documents.

On the other hand, Fairchild will consent to jurisdiction in Canada, and has offered to make its records and employees available to plaintiffs in Canada. As to persons not presently employed by Fairchild or not residing in this District (See Paper No. 11, Ex. II), access to their testimony would be the same whether the action were tried in here or in Canada (Paper No. 11, Ex. I, at 18–22). Moreover, all of the evidence relating to damages must come from Canada since that is where the injured persons were treated and maintain their residences (Paper No. 11, Ex. I, at 14 & Ex. 11, at ¶ 8). It also appears that most of the plaintiffs have filed claims under Quebec's Workmen's Compensation Act. According to the uncontested affidavit of Andre J. Clermont, Q.C., the statutory compensation proceeding is generally heard at the same time as the damages segment of the civil case (Paper No. 11, Ex. I, at 10, 16–18).

Plaintiffs do not contend that they, as Canadian subjects, cannot get a fair hearing in their own country. Although punitive damages or a jury trial may not be available to them in Canada, it is apparent

---

**3.** Plaintiffs note that they had commenced litigation in the United States prior to Fairchild's consenting to jurisdiction in Canada. They assert, therefore, that if Fairchild's motion is granted it will have accomplished a sort of "reverse forum shopping" that is not permitted when transfers are made pursuant to section

1404(a) because the Canadian forum was not in existence at the time plaintiffs filed suit in this country. This precise argument was rejected by the Second Circuit in *Schertenleib v. Traum*, 589 F.2d at 1159–64. This court concurs in that decision.

from the evidence of record that the Canadian system provides fair and just compensation for its citizens. In any event, plaintiffs have offered no evidence to the contrary.

As to the issue of delay, both Quebecaire and Rolls Royce (Canada), Ltd., have offered to admit liability in a Canadian forum, leaving as to them only the question of damages for settlement or litigation (Paper No. 3, Exs. 3 & 4; Paper No. 11, Ex. I, at 11–12). Defendant has submitted evidence indicating that the offers of Quebecaire and Rolls Royce (Canada), Ltd., are still open to the plaintiffs in this case and will remain open even if Fairchild is named as a defendant in any of the suits presently pending in Canada (Paper Nos. 14, 15, 20 & 21).

Plaintiffs suggest that even if Fairchild consents to jurisdiction in Canada, and the offers of Quebecaire and Rolls Royce (Canada), Ltd., remain viable, Canada may not be an alternative forum within the meaning of *Gulf Oil.* According to plaintiffs' Canadian counsel, the prescription laws of Quebec might bar a suit against Fairchild because an action was not instituted against Fairchild in Canada within one year of the date of the accident (Paper No. 16, Ex. IV; Paper No. 18). Although not stated expressly, the inference to be drawn is that Quebec's prescription laws cannot be waived by the

party in whose favor they operate, or have not been tolled by the circumstances of this case.

To insure that plaintiffs are not left without a remedy, dismissals in cases such as this are customarily conditioned upon the defendant's consent to jurisdiction in the alternative forum and waiver of any statute of limitations defense that has arisen since the commencement of the original action. *See, e. g., Schertenleib v. Traum,* 589 F.2d at 1163, 1166. *Cf. Mizokami Bros. of Arizona v. Mobay Chemical Corp.,* 483 F.Supp. 201, 206 (W.D.Mo.1980) (fact that statute of limitations of alternative forum may bar plaintiff's action there does not mean that forum is not available within the meaning of *Gulf Oil*). Plaintiffs have not presented any persuasive evidence that prescription will bar Fairchild's joinder in Canada, and therefore cannot defeat dismissal on that basis.[4] In any event, if the Canadian courts do declare that a suit against Fairchild is time-barred, plaintiffs would be protected by the conditional nature of the dismissal.

## B. The Public Interest

Two important public interest factors support dismissal of this action in favor of a Canadian forum. First, Canada has a strong local interest in the resolution of the controversy. *Gulf Oil Corp. v. Gilbert,* 330

---

4. Although this court does not profess to be an expert in Canadian law, its own research indicates the following. A statute of limitations in the context of a personal action, as distinguished from one involving real property, does not extinguish a right or an obligation but only a remedy. It is characterized as a procedural point of law, and the defense must be raised by the party in whose favor the limitation operates. *See, e. g., Miller v. Wolfe,* 30 N.S.R. 277 (1897); *Emms v. R.,* [1977] 1 F.C. 101, *rev'd on other grounds,* [1978] 2 F.C. 174 (C.A.).

The Quebec Civil Code, however, employs prescriptions rather than statutes of limitations. A prescription is a rule of substantive law, the expiration of which extinguishes a right or obligation. *Lessona Corp. v. Consolidated Textile Mills, Ltd.* 82 D.L.R.3d 56, 58–61 (Sup.Ct. of Canada 1977). The period of prescription applicable to wrongful death and personal injury actions is one year. *Quebec Civil Code,* art. 1056 & art. 2262. If the prescribed period has expired the obligation is held to be

extinguished and no action can be maintained. *Quebec Civil Code,* art. 2267. *See* J. Castel, *The Civil Law System of the Province of Quebec* 145–46 (1962).

While it is not difficult to define Canadian statutes of limitations and prescriptions, it is not so simple to apply them to the facts of this case. For example, this court is not equipped to determine the effect, if any, on Quebec's prescription laws of the fact that Fairchild was not subject to jurisdiction in Canada on the date of the crash. Moreover, this court does not know whether Quebec's courts will consider important the fact that plaintiffs sued Fairchild in New York within the one year prescription period. In sum, the court finds that it is necessary for the Canadian courts to resolve the question of whether plaintiffs' are prescribed or otherwise barred from joining Fairchild as a defendant to the existing Canadian suits. Fairchild has agreed not to raise any such defense in Canada. Paper No. 19, at 2.

U.S. at 509, 67 S.Ct. at 843. That country's citizens were injured in the airplane crash, and the crash occurred over Canadian territory. Two Canadian companies are involved. Further, Canada is strongly concerned with air safety and the activities of companies operating within its borders.

In contrast, Maryland has an appreciably lesser interest in the controversy. Although Maryland is interested in regulating the activities of corporations that place into commerce allegedly defective instrumentalities, *see Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976) (adopting the strict liability rule of Restatement (Second) Torts § 402A), none of its citizens were injured in the accident nor are any of its citizens in need of compensation. The only contact that Maryland has with this case is that a corporation operating in Maryland manufactured and sold the aircraft involved in the accident. Given that the aircraft had been under the control of a Canadian company for approximately twenty years before the crash, the fact that Fairchild will account for its activities in a Canadian forum, rather than a Maryland forum, contravenes no strong state policies.

The second public interest factor favoring dismissal is that Canadian law will likely apply to most, if not all of, the issues in the case. Although the fact that this court might be called on to apply the law of a foreign country does not alone compel dismissal, *see, e. g., Reavis v. Gulf Oil Corp.*, 85 F.R.D. 666, 672 (D.Del.1980), it is nevertheless an important consideration. *See, e. g., Gulf Oil Corp. v. Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843; *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 967 (2d Cir. 1980); *Schertenleib v. Traum*, 589 F.2d at 1163, 1165.

Plaintiffs contend that since Civil Action No. M–79–2330 was transferred to this District from New York pursuant to 28 U.S.C. § 1404(a), this court must apply New York's choice of law rules in determining the applicable substantive law. *Van Dusen v. Barrack*, 376 U.S. 612, 639–40, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964). *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Linnell v. Sloan*, 636 F.2d 65 (4th Cir., 1980).

Unlike Maryland which generally adheres to the doctrine of *lex loci delicti, see Uppgren v. Executive Aviation Services*, 326 F.Supp. 709, 711 (D.Md.1971); *Frericks v. General Motors Corp.*, 274 Md. 288, 296, 336 A.2d 118 (1975), the New York Court of Appeals has adopted what may be termed a "significant contacts" or "governmental interest" approach to choice of law determinations. Therefore, New York choice of law gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963). *See Loebig v. Larucci*, 572 F.2d 81, 84 (2d Cir. 1978). *But compare Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 699, 405 N.Y.S.2d 441, 442, 376 N.E.2d 914, 915 (1978) (*lex loci delecti* remains the general rule in tort cases to be displaced only in extraordinary circumstances).

Even assuming, however, that New York choice of law rules apply, this court believes that a New York court would apply Canadian law to at least the issues of negligence and damages. *See, e. g., Loebig v. Larucci*, 572 F.2d at 84; *Masera v. Trans World Airlines, Inc.*, 492 F.Supp. 950, 952–53 (S.D. N.Y.1980); *Holzsager v. Valley Hospital*, 482 F.Supp. 629, 634–35 (S.D.N.Y.1979); *Chance v. E.I. DuPont De Nemours & Co., Inc.*, 371 F.Supp. 439, 443–48 (E.D.N.Y. 1974). *See also Danser v. Firestone Tire & Rubber Co.*, 86 F.R.D. 120, 123 (S.D.N.Y. 1980); *Fosen v. United Technologies Corp.*, 484 F.Supp. 490, 505 (S.D.N.Y.1980). Although under New York's type of choice of law analysis Maryland law might be held to apply to the issue of strict liability, *see, e. g., Reyno v. Piper Aircraft Co.*, 630 F.2d at 166–68; *Baird v. Bell Helicopter Textron*, 491 F.Supp. 1129, 1140–42 (N.D.Tex.1980), such a conclusion would not militate against dismissal under the circumstances of this case. Plaintiffs have not argued that Canada does not recognize the doctrine of strict liability or would not apply it if Maryland law were found to control that issue. In

any event, plaintiffs are assured of prevailing on the liability issue as against Quebecaire and ·Rolls Royce (Canada), Ltd., in a Canadian forum.[5] (Papers No. 14 & 15). That Fairchild has not offered to admit liability in Canada should not affect plaintiffs' compensation because they can only recover once for their injuries.[6]

After careful consideration of the above mentioned factors, the court concludes that the balance of interests strongly favors dismissal, provided Fairchild consents to jurisdiction in Canada and waives any defense predicated upon statutes of limitations or prescriptions. Accordingly, it is this 3rd day of February, 1981, ORDERED that defendant's motion to dismiss for *forum non conveniens* is GRANTED, and it is FURTHER ORDERED that these consolidated cases be DISMISSED, subject to the following conditions:

1. Defendant shall submit itself to the jurisdiction of the appropriate Canadian courts and tribunals.

2. Defendant shall waive any defense in the nature of statutes of limitations or prescriptions.

3. Defendant shall produce for plaintiffs' use in Canada all reasonable discovery materials requested by plaintiffs, including all documents relevant to the manufacture and design of the aircraft, and any of defendant's present employees whose testimony is necessary.

4. Defendant shall make all reasonable efforts to produce for plaintiffs' use in Canada the testimony of former Fairchild employees who were involved with the manufacture and redesigning of the aircraft.

5. That plaintiffs' warranty theory would likely be governed by Maryland law, because the sale occurred in Maryland, is of little consequence. Since the sale occurred approximately twenty years ago a warranty theory is probably time-barred, *Md. Commercial Law Code Ann.* § 2–725 (action to be commenced within four years of tender of delivery), and dismissal may not be avoided by the assertion of baseless claims.

*See Dahl v. United Technologies Corp.,* 472 F.Supp. 696, 701 (D.Del.1979), *aff'd,* 632 F.2d 1027 (3d Cir., 1980).

6. Although plaintiffs have indicated their belief that they could recover from both the Canadian companies and Fairchild, they have cited no authority to that effect.