### In re DALKON SHIELD LITIGATION.

United States District Court,
D. Maryland.

Nov. 16, 1983.

Michael A. Pretl, Pretl & Schultheis, Baltimore, Md., for plaintiffs.

Deborah E. Jennings, Piper & Marbury, Baltimore, Md., for defendant Hugh J. Davis, M.D.

Charles P. Goodell, Jr., Susan T. Preston and Richard M. Barnes all of Semmes, Bowen & Semmes, Baltimore, Md., for defendant A.H. Robins Co.

## MEMORANDUM

NORTHROP, Senior District Judge.

Presently pending in this Court's "Dalkon Shield" cases are motions to dismiss filed by defendant, A.H. Robins Company (Robins) in which defendant, Hugh J. Davis, M.D., generally joins. Defendants request dismissal against all those plaintiffs who reside outside the State of Maryland on the basis of improper venue under 28 U.S.C. § 1391(a), and pursuant to the doctrine of *forum non-conveniens*. Due to the similarity in the legal issues and factual allegations in the cases, the motions were consolidated and presented to me for decision.

These products liability, personal injury cases represent a small sampling of the litigation that has taken place nationwide concerning the Dalkon Shield, an intrauterine contraceptive device. In virtually every suit, the plaintiffs contend that the Dalkon Shield was a dangerous and defective product, that the defendants deliberately concealed their knowledge of these defects, that the defendants marketed and sold the Shields to the plaintiffs while grossly exaggerating their safety and efficacy, and that as a proximate result of these acts, the plaintiffs suffered grave injury and other medical harm. Though the plaintiffs' allegations of injuries vary, they often include, but are not limited to, suggestions of infertility, life threatening pelvic infections, severe pain and suffering, and loss of consortium.

The claims have been brought under several legal theories. Among them are fraud, negligence, strict liability, breach of express warranties, breach of implied warranties, negligent recall of defective product, and conspiracy. Liability is generally asserted as being shared by the defendants, jointly and severally.

## VENUE

Primarily, jurisdiction in the Dalkon Shield cases is based on diversity of citizen-

ship.[1] Accordingly, the provisions of 28 U.S.C. § 1391(a) control. That section provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

The application of this rule as it concerns corporate defendants is found in 28 U.S.C. § 1391(c). It reads:

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business and such judicial district shall be regarded as the residence of such corporations for venue purposes.

The defendants contend that venue is not proper in Maryland because the plaintiffs in these cases do not reside in Maryland, and the defendant A.H. Robins Co. was not incorporated, licensed or "doing business" in Maryland, and further that the claims did not arise in Maryland. Plaintiffs, on the other hand, generally contend that not only was A.H. Robins "doing business" in Maryland at the relevant time, but the claims arose in Maryland since much of the research and medical testing of the Dalkon Shield was done in Maryland at the Johns Hopkins Hospital.

■ The burden of proof rests with the plaintiff to show that venue is appropriate in a particular district. *Bartholomew v. Virginia Chiropractors Associations, Inc.,* 612 F.2d 812 (4th Cir.1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980). Plaintiffs, in their supplemental memorandum in opposition to the defendants' motion to dismiss for improper venue, state that the discovery, and in particular defendant Robins' answers to interrogatories, has established that Robins' activities in Maryland are purposeful, continuing, and produce millions of dollars of sales annually for the defendant company and therefore, Robins can be found to be "doing business" in Maryland for venue purposes. More specifically, plaintiffs point to the following facts as dispositive of the "doing business" issue:[2] (1) defendant Robins distributes approximately 193 consumer products and hundreds of pharmaceutical products, an amount valued at over ten million dollars of which was distributed in Maryland between November, 1981 through July, 1983; Robins has at least eleven full-time sales employees who were Maryland residents; Robins targeted over 1,500 physicians to be contacted about its products during the first three months of 1982; Robins has 460 current active retail outlets in Maryland. (These facts are taken from the answers of Robins to plaintiffs' interrogatories.)

From this, plaintiffs argue that venue is proper in Maryland because Robins is "doing business" here. There is a division of authority regarding the standard used to determine the quantum of a defendant's business contacts necessary for venue purposes. Plaintiff cites *inter alia, Nelson v. Victory Electric Works, Inc.,* 210 F.Supp. 954, 956 (D.Md.1962) and *L'Heureux v. Central American Airways Flying Service, Inc.,* 209 F.Supp. 713 (D.Md.1962) for the proposition that a defendant corporation need only have such contacts as would satisfy the *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) standard for personal jurisdiction. Defendant Robins, on the other hand, relies on Judge Young's decision

---

**1.** In several of the actions, jurisdiction is founded on 28 U.S.C. § 1331, since the plaintiffs allege violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, 331, 351–52. Therefore, § 1391(b) applies to them, and the residency of the plaintiffs has no bearing on venue. *See, Bates-Brownsword v. Hugh J. Davis, M.D., et al.,* M 82–3794; *Fiske v. Hugh J. Davis, M.D., et al.,* N83–625; *Pandelakis v. Hugh J. Davis, M.D., et al.,* Y 82–3793; *Treanor v. Hugh J. Davis, M.D., et al.,* HM 82–2961.

**2.** It should be noted that all plaintiffs in these cases are represented by the same counsel; one brief in opposition to defendants' motion has been filed on behalf of all plaintiffs. It should also be noted that A.H. Robins was not incorporated or licensed to do business in Maryland, thus the "doing business" facet of the venue statute is the only one to be considered with respect to defendant Robins Co.

in *Finance Company of America v. BankAmerica Corp.*, 493 F.Supp. 895 (D.Md. 1980), which states: "... the 'doing business' test is not identical to the minimum contacts jurisdictional standard...." *Id.* at 910. Judge Young further stated that it is appropriate to consider whether a defendant is doing such business as would require it to register in the state and to decide if defendant's operation is "localized."

In this instance, it appears from the briefing and interrogatories that A.H. Robins conducts operations nationwide; thus, whether its business is "localized" is not a meaningful inquiry under these circumstances. However, this Court *is* in agreement with Judge Young's decision insofar as it requires something more for venue purposes than the constitutional requirement of minimum contacts for service of process under the *International Shoe* standard. As was mentioned in the *Finance Company* case, the "doing business" issue is a matter of federal law. But, it is instructive to look at the factors which enter into the determination of whether the relevant corporation has such contacts as would require it to become licensed or registered in the State.

■ Maryland law on this issue guides us to consider whether the company had property, offices, a telephone listing, employees, agents, inventory, research and development facilities, advertising or bank accounts in Maryland. *S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc.*, 286 Md. 335, 407 A.2d 1139 (1978). Under these factors, it appears to this Court that defendant Robins had employees, an extensive advertising and sales campaign focused on target physicians and outlets in this district, as well as the fact that much of the research and development of the intrauterine device was done at the Johns Hopkins University Hospital.[3] Moreover, in *King v. Johnson Wax Associates, Inc.*, 565 F.Supp. 711 (D.Md.1983) (Northrop, J.), it was held that another relevant, although not controlling, factor is the percentage of total sales volume conducted in the district as seen from the point of view of the average businessman. Here, as mentioned above, Robins' business in Maryland is less than 2 percent of its total; *yet*, the value of its sales totalled over ten million dollars for the relevant years. These facts are sufficient to support a finding that under *King v. Johnson Wax*, Robins was "doing business" in Maryland at the relevant time because it had substantial, deliberate and continuing contacts with this State. *See, generally, Finance Company*, 493 F.Supp. at 910.

In their written submissions to this Court, all parties have represented that defendant Dr. Davis is a resident of Maryland. Thus, in view of the above analysis and given that all defendants reside in Maryland, venue is proper in Maryland for those cases in which only Dr. Davis and A.H. Robins are named as defendants.

■ There are several cases, however, in which one Frederick A. Clark, Jr., M.D., is named as a defendant in addition to Robins Co. and Davis.[4] Dr. Clark is alleged to have participated in the conspiracy and alleged fraudulent activities surrounding the marketing of the Dalkon Shield. Since Clark is, as admitted by both parties, a resident of Virginia, then all the defendants do not reside in Maryland. Thus, ven-

---

**3.** The relevant time at which to consider whether a defendant is "doing business" within a state for venue purposes is at the time when the cause(s) of action arose. *Snyder v. Eastern Auto Distributors, Inc.*, 357 F.2d 552 (4th Cir.1966), *cert. denied*, 384 U.S. 987, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966). Thus, the research and development at Johns Hopkins University is a factor to be considered since the geneses of plaintiffs claims occurred with the development of the Shield.

**4.** These cases are: *Acevedo*, M 83–2036; *Anders*, B 83–2693; *Apton*, HM 82–2492; *Cohen*, H 83–2794; *Constantine*, HM 83–2983; *Crumley*, B 82–2695; *Flanagan*, H 83–2035; *Freeman*, B 83–2694; *Hinerman*, HM 83–2897; *Howell-Coleman*, B 83–2795; *Hunt*, HM 83–1815; *LaBorde*, B 83–2493; *Michaliszyn*, HM 83–2037; *Reed*, H 83–2982. (For convenience, only plaintiffs' names are given; each case names as defendants: Frederick A. Clark, M.D., Hugh J. Davis, M.D., and A.H. Robins Company.)

ue can only be proper in this Court if Maryland is the district "in which the claim(s) arose."

The concept of where a claim arose is an elusive one indeed. This is especially true where there are plaintiffs from across the globe, multiple defendants who reside in different districts, and relevant acts and occurrences found in different states. To date, various opinions have come out in similar "Dalkon Shield" cases, one even from this district: *Hurwitz v. Davis, et al.,* (Unpublished Opinion) Civil Action No. HM 82–1742 (1983). In particular, this Court finds *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809 (E.D.Va.1981), *aff'd.* 715 F.2d *142* (4th Cir.1983), to be most persuasive and, in fact, controlling since it was affirmed by the United States Court of Appeals for the Fourth Circuit.

In *Hodson,* the Court was faced with facts very similar to those presented in the cases *sub judice.* The Court decided on those facts that, under the "weight of the contacts test," the cause of action of Dalkon Shield plaintiffs arose in Virginia. The Court stated:

> The conduct of the principal defendant, Robins, occurred within this district. The Shield was assembled primarily in Richmond, and decisions and planning for the distribution, marketing and testing of the device occurred within and were controlled from this district. Whatever conduct by Robins which might result in a finding of negligence in design, manufacture or distribution or breach of warranties on the product occurred within this district, and the acts or omissions of the other defendants contributing to this alleged fault occurred here or were coordinated from this district. Decisions and preparation by the defendants which may have caused their advertising for the Shield to be fraudulent took place

> here or were directed from this district
> . . . .

*Hodson,* 528 F.Supp. at 815.

Furthermore, the Hodson Court found that more contacts were with Virginia than any other forum: "This Court concludes that the contacts of plaintiffs' claims with this forum [Virginia] outweigh those with the English *or any other setting."* Id. (emphasis supplied.)[5] As in *Hodson,* this Court finds that the claims *arose* in Virginia, not in Maryland. Accordingly, in those cases where defendant Frederick A. Clark is named, no basis for venue can be found in Maryland. Thus, having improperly placed venue, plaintiffs' actions in those cases must be dismissed under 28 U.S.C. § 1406(a). Plaintiffs, however, will be given ten days from the date of the accompanying order to voluntarily dismiss Dr. Clark as a party and to proceed against the Robins Company and Dr. Davis. In all other cases, venue has been properly laid, so defendants' motion based upon *forum non-conveniens* must be addressed.

### FORUM NON–CONVENIENS

█ Under § 1404 of the Judiciary Code, a district court, in the exercise of its sound discretion, may transfer an action to a more convenient forum even though venue is properly laid in that district:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). This statute is the federal statutory implementation of the common law *forum non-conveniens* doctrine. The policy behind § 1404 was to give the venue statutes flexibility, to cut down on forum shopping and to allow a court to "decline" jurisdiction which would greatly inconvenience the litigants and witnesses even though technical venue requirements have been met. *Gulf Oil Cor-*

---

**5.** It should be noted that even though this Court finds that the claims arose in Virginia, this in no way refutes or casts doubt on the finding that defendant Robins does business in Maryland,

for *all* of Robins' business can be taken into account regarding the "doing business" standard, not only that involving the product of present primary concern, the Dalkon Shield.

*poration v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

■ Under § 1404, however, a court may only transfer a case to a district "where it might have been brought." In *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), the Supreme Court held that if the potential transferee forum is one in which plaintiff could only sue the defendant if he consents to suit, then that forum is *not* one where the action might have been brought. In the instant cases, it appears that defendant Davis probably does not have the requisite "minimum contacts" with the proposed transferee forums so that his consent would most likely be required. Thus, under *Hoffman v. Blaski, supra,* § 1404 is not available. As a result, the common law doctrine of *forum non-conveniens,* as urged by the defendant, must be considered.

Plaintiffs contend that if § 1404 is not available, a federal court may not use the common law doctrine of *forum non-conveniens* to transfer a case to another federal district court. That is, plaintiffs argue that where the proposed alternative forum is not a state court or the court of a foreign country, then *forum non-conveniens* cannot be used because it has been statutorily replaced by § 1404. Plaintiffs rely on *Glicken v. Bradford,* 204 F.Supp. 300 (S.D. N.Y.1962) which states in relevant part:

> It can be argued, and rather persuasively, that the doctrine of *forum non conveniens* is no longer a part of federal jurisprudence and that § 1404(a) now stands in its stead.

*Id.* at 304. (citations omitted).

Although plaintiffs' arguments are persuasive in this regard, this Court will refrain from ruling on the issue of whether § 1404 completely replaced the *forum non-conveniens* doctrine where the alternative forum is another federal district court. The reason that such a ruling is not necessary is because even under the *forum non-conveniens* doctrine, the relevant cases could not be dismissed.

Upon initial consideration, it was this Court's inclination to dismiss the cases filed by non-resident domestic plaintiffs because the nature of each case makes it more appropriate that it be handled at its "origin." That is, the home state of each plaintiff would most likely be a better forum for the case since witnesses, physicians, hospital records and other forms of proof certainly would be more readily obtained near home than in Maryland. Moreover, it is highly probable that conflicts of law rules would direct a Maryland court to apply the law of the place of injury (which generally would be plaintiffs' home states) to the case. A federal court sitting in a plaintiff's home state would be more familiar with the law of the situs state than this court would be. These factors, as considered in light of *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), weigh heavily in favor of a *forum non-conveniens* dismissal. The next consideration, however, is the availability of an alternative forum.

A. Availability of an Alternative Forum for the Domestic Plaintiffs:

■ The *forum non-conveniens* doctrine only applies where an alternative court has both jurisdiction and venue over the case. The alternative forum in the instant cases would be a federal one and 28 U.S.C. § 1332 granting jurisdiction in cases where there is diversity of citizenship would apply. Since the alternatives are plaintiffs' home states, venue would be proper in each under § 1406 which allows venue in diversity cases "where all the plaintiffs reside." What also must be considered is the amenability of the defendants to suit in the alternatives.

The relevant states are: Oregon, New York, Pennsylvania, New Jersey, Florida, Michigan, California, Connecticut, Ohio, Vermont and Colorado. In each of these states, defendant Robins is most likely amenable to suit since it does business nationwide and, therefore, would have the requisite "minimum contacts" with each state to subject it to process.

Defendant Davis, however, presents a different situation. Since Davis most likely

is not amenable to process absent his consent, this Court would have to condition its dismissal upon consent by Davis to jurisdiction in the various states named above. *See Dahl v. United Technologies Corp.*, 632 F.2d 1027 (3d Cir.1980); *Grodinsky v. Fairchild Industries, Inc.*, 507 F.Supp. 1245 (D.Md.1981). Defendant Davis has indicated that he would waive any jurisdictional defense in many of the cases. As discussed below, however, the proposed alternatives are not suitable even with this waiver.

In addition to conditioning a dismissal upon consent to jurisdiction by Dr. Davis, a waiver of statute of limitations defenses would also be required as was found in *Grodinsky v. Fairchild Industries, Inc.*, 507 F.Supp. 1245 (D.Md.1981). Defendant Robins, however, contends that it should not be required to waive statute of limitations defenses that existed at the time when the original actions were filed. That is, Robins contends that the suits are barred in the proposed alternative forums and were so barred even at the time when the original action was filed here in the District of Maryland. It is defendant Robins' further contention that plaintiffs in the new forums should be placed in the same position as they were in Maryland. Thus, Robins argues that it should not be required to waive a statute of limitations defense that it would have been able to assert even here in Maryland. The particular defense in question is the foreign state's statute of limitations which arguably would apply here in Maryland under the law of the place of injury rule as long as the relevant statute was a substantive law rather than a procedural one.

Plaintiff, on the other hand, asserts that if the action is barred in plaintiff's home state, then that state or forum cannot be an alternative forum for *forum non-conveniens* purposes. Although the issue is open to question, there is authority from this Court which indicates that if an action is time-barred in the proposed alternative forum, that action cannot be dismissed under *forum non-conveniens* principles. *See Grodinsky v. Fairchild Industries, Inc.*,

507 F.Supp. 1245, 1251 (D.Md.1981) (where Judge Miller indicated that the case would go forward in Maryland if it were determined that the suit was time-barred in the alternative forum, Canada); *see also Poe v. Marquette Cement Mfg. Co.*, 376 F.Supp. 1054 (D.Md.1974) (where Judge Harvey found that a *forum non-conveniens* dismissal should not be entered where plaintiffs would be without a remedy because their claim was time-barred in the alternative forum, an Illinois state court).

■ This Court agrees with plaintiffs that to the extent an action is barred by the statute of limitations in the proposed alternative forum, then that forum cannot serve as a valid alternative forum for *forum non-conveniens* purposes. This is not to say, however, that defendant Robins is incorrect in its argument that it should be able to raise the statute of limitations issue even here in a federal court sitting in Maryland. However, defendant's assertion of this issue is premature and must be decided upon a separate motion by defendant based upon the statute of limitations.

B. Availability of an Alternative Forum for Foreign Plaintiffs:

■ *In Grodinsky v. Fairchild Industries, Inc., supra,* this Court held that a *forum non-conveniens* dismissal was appropriate where suit was brought in Maryland for injuries sustained in an aircrash in Canada, the airlines were incorporated in Canada, and the parties were Canadian. Thus, Canada provided a more convenient and more "interested" forum than Maryland. In the instant cases, seven plaintiffs are from Australia and one from Canada. Defendant Robins urges that policy considerations and the *Grodinsky* case clearly support a finding that Australia is a better forum than Maryland. What is not so clear to this Court is whether Australia does, in fact, provide an alternative forum at all. Although defendant has provided the Court with an opinion letter from an Australian solicitor which indicates that an Australian court may have jurisdiction over

the controversies, defendant has not made it clear that Robins is amenable to suit in Australia or that Davis is amenable to suit in Australia. No assurance of this has been presented by defendant in this regard. It is defendant's burden to show that an alternative forum exists. *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507, 67 S.Ct. at 842; *Hodson v. A.H. Robins Co.*, 528 F.Supp. 809 (E.D.Va.1981). The defendant Robins has failed to adequately sustain that burden. Moreover, even if various waivers and consents are obtained, it is too burdensome administratively to have one defendant and not the other consenting in some cases, but not others and so on. Thus, as the District Court for the Eastern District of Virginia did in *Hodson, supra,* this Court will retain jurisdiction over the cases filed by the Australian plaintiffs and the one Canadian plaintiff.[6]

## CONCLUSION

In sum, this Court finds that venue is proper in all actions except those in which defendant Frederick A. Clark, M.D., is named. In those actions a dismissal for improper venue must be ordered.[7] Plaintiffs must, as soon as possible, refile their actions where venue is proper or retain them in this District with a dismissal of Frederick Clark as a defendant.

Further, in all cases where plaintiffs are domestic, non-residents, this Court shall retain jurisdiction over those cases and will deny defendants' motion to dismiss for improper venue and *forum non-conveniens.*[8] This Court will hear motions by defendants raising issues regarding which statute of limitations applies to each action and whether or not the individual statute has run. However, since these issues turn on whether or not particular statutes are substantive or procedural, defendant will be expected to clearly and concisely state the statute and citation of each and every statute upon which it relies and will be expected to *clearly* indicate which state statute applies to each case. Cases shall be cited by name *and* complete docket number. Further, sufficient copies of each motion shall be furnished to the Clerk's Office so that a copy of the motion itself (without the accompanying memorandum) appears in the *court* file for each case that is involved.

And, finally, this Court fails to find defendants' arguments for a *forum non-conveniens* dismissal compelling in those cases involving foreign plaintiffs.[9] Thus, this Court will retain jurisdiction in the cases filed by foreign plaintiffs.

In view of the decisions made herein, this Court does not find it necessary at this time to rule on the motions filed in some cases which challenge individual actions

---

**6.** This Court has not overlooked the question of what law is to be applied in these actions. Under *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941), the conflicts of law rules of Maryland would apply to this action. It is not necessary to decide what Maryland conflicts rules would require since it still appears that an alternative forum is not available.

**7.** These cases are listed in footnote 4, *supra.*

**8.** These cases are: *Amsler,* M–82–8295; *Banks,* M–83–166; *Barzman,* H–83–348; *Baxter,* JH–83–19; *Benton,* N–83–2768; *Blair,* M–82–3791; *Breakstone,* B–83–154; *Browne,* K–83–344; *Bunce,* HM–83–918; *Claytor,* B–83–1145; *Connelly,* K–83–917; *Dagel,* B–82–2987; *DeJurenev,* B–83–795; *Diamond,* JH–83–169; *Downes,* JH–83–346; *Fiske,* N–83–625; *Guarigulia,* M–83–155; *Hamilton,* K–83–1066; *Harris,* Y–83–922; *Havice,* H–83–162; *Hull,* H–83–156; *Johnson,* N–83–157; *Knowles,* K–83–703; *Lauder,* JH–83–158;

*Laycock-Cowles,* B–83–165; *Luxford,* N–83–168; *McGrath,* B–83–159; *McGuffin,* Y–83–20; *Madill,* K–82–3789; *Manipole,* Y–83–347; *Mawhinney,* JH–82–2986; *Maxted,* M–83–1713; *Miller,* JH–83–920; *Nuss,* H–83–388; *O'Reilly,* JH–83–919; *Pandelakis,* Y–82–3793; *Pearsall,* N–83–702; *Pindar,* M–83–161; *Pottratz,* N–83–163; *Radius,* N–82–22; *Redmond,* H–83–1712; *Rice,* JH–82–2792; *Riek,* Y–83–29; *Robinson,* B–83–921; *Roxberg,* M–83–18; *Shadburne-Vinton,* K–83–160; *Thatcher,* N–83–345; *Tolliver,* Y–82–3790; *Truitt,* N–83–1068; *Waits,* JH–83–164, *Weiler,* Y–83–21; *Wessels,* HM–83–1146; *Williams,* K–82–3505, *Witcher,* JH–83–23; and *Wood,* B–83–866.

**9.** These cases are: *Bates-Brownsword,* M–82–3794; *Birtles,* JH–83–631; *Fanning,* HM–83–1714; *Moulton,* JH–82–2849; *Plante,* Y–83–1711; *Schebella,* H–82–2850; *Southwell,* B–82–1744; *Campbell,* JH–83–1148; *Chandler,* H–83–167; and *Treanor,* HM–82–2961, *Southwell,* B 82–1744.

due to a prior pending suit. If defendant Robins wishes to pursue such motions at a later time, they may be separately refiled in the individual cases.

Separate Orders will be entered in accordance with this opinion.

### ORDER

In accordance with the foregoing Memorandum, and for the reasons stated therein, IT IS, this 16th day of November, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the motions to dismiss based upon improper venue and/or *forum non-conveniens* filed by the defendant Robins in the following cases BE, and the same hereby ARE, DENIED:

| | |
|---|---|
| Amsler, H 82–3295 | Banks, M 83–166 |
| Barzman, H 83–348 | Baxter, JH 83–19 |
| Benton, N 83–2768 | Blair, M 82–3791 |
| Breakstone, B 83–154 | Browne, K 83–344 |
| Bunce, HM 83–918 | Claytor, H 83–1145 |
| Connelly, K 83–917 | Dagel, B 82–2987 |
| DeJurenev, B 83–759 | Diamond, JH 83–169 |
| Downes, JH 83–346 | Fiske, N 83–625 |
| Guarigulia, M 83–155 | Hamilton, K 83–1066 |
| Harris, Y 83–922 | Havice, H 83–162 |
| Hull, H 83–156 | Johnson, N 83–157 |
| Knowles, K 83–703 | Lauder, JH 83–158 |
| Laycock-Cowles, B 83–165 | Luxford, N 83–168 |
| McGrath, B 83–159 | McGuffin, Y 83–20 |
| Madill, K 82–3789 | Manipole, Y 83–347 |
| Mawhinney, JH 82–2986 | Maxted, M 83–1713 |
| Miller, JH 83–920 | Nuss, H 83–388 |
| O'Reilly, JH 83–919 | Pandelakis, Y 82–3793 |
| Pearsall, N 83–702 | Pindar, M 83–161 |
| Pottratz, N 83–163 | Radius, N 82–22 |
| Redmond, H 83–1712 | Rice, JH 82–2792 |
| Riek, Y 83–29 | Robinson, B 83–921 |
| Roxberg, M 83–18 | Shadburne-Vinton, K 83–160 |
| Thatcher, N 83–345 | Tolliver, Y 82–3790 |
| Truitt, N 83–1068 | Waits, JH 83–164 |
| Weiler, Y 83–21 | Wessels, HM 83–1146 |
| Williams, K 82–3505 | Witcher, JH 83–23 |
| Wood, B 83–866 | |

Non-domestic plaintiffs:

| | |
|---|---|
| Bates-Brownsword, M 82–3794 | Birtles, JH 83–631 |
| Fanning, HM 83–1714 | Moulton, JH 82–2849 |
| Plante, Y 83–1711 | Schebella, H 82–2850 |
| Campbell, JH 83–1148 | Chandler, H 83–167 |
| Treanor, HM 82–2961 | Southwell, B 82–1744 |

2. That the motions to dismiss for improper venue filed by defendant Robins in the following cases BE, and the same hereby ARE, GRANTED without prejudice, and plaintiffs will be given ten (10) days from the date of this Order to voluntarily dismiss defendant Clark from the following cases:

| | |
|---|---|
| Acevedo, M 83–2036 | Anders, B 83–2693 |
| Apton, HM 82–2492 | Cohen, H 83–2794 |
| Constantine, HM 83–2983 | Crumley, B 82–2695 |
| Dull, HM 83–3261 | Flanagan, H 83–2035 |
| Freeman, B 83–2694 | Hinerman, HM 83–2897 |
| Howell-Coleman, B 83–2795 | Hunt, HM 83–1815 |
| LaBorde, B 83–2493 | Michaliszyn, HM 83–2037 |
| Reed, H 83–2982 | |

3. That if defendant Clark is not dismissed as a party in any of the above-mentioned cases within the ten—(10)—day period, then that case will be summarily dismissed;

4. That any and all motions based upon the statute of limitations which defendant Robins intends to file shall be so filed within twenty (20) days of the date of this Order and shall comply with the instructions set forth in the foregoing Memorandum; and

5. That the Clerk of Court mail copies of this Order and the foregoing Memorandum to counsel for the parties in all cases.