DAVID C. HARE, JR. *v.* AUDREY HARE

[No. 655, September Term, 1973.]

*Decided April 22, 1974.*

The cause was argued before THOMPSON, GILBERT and DAVIDSON, JJ.

*Leonard J. Kerpelman* for appellant.

No argument for appellee.

THOMPSON, J., delivered the opinion of the Court.

The problem of whether a particular contempt proceeding is civil or criminal has been the subject of discussion in

many Court opinions and other writings. This Court recently reviewed the matter extensively in *Roll and Scholl v. State*, 15 Md. App. 31, 288 A. 2d 605 (1972), as did the Court of Appeals in *State v. Roll and Scholl*, 267 Md. 714, 298 A. 2d 867 (1973). We need not reiterate those discussions. This case points up the necessity, as emphasized in the latter case, of determining prior to trial the nature of the contempt proceedings. As the Court of Appeals said in *State v. Roll and Scholl, supra* at 730-31:

> "This is necessary because once a contempt is determined to be in the nature of a criminal proceeding other rights are necessarily activated. While a contemnor in a criminal contempt proceeding in Maryland is not entitled to indictment by a grand jury and may not have a right to a jury trial,[11] *Sheets v. City of Hagerstown*, 204 Md. 113, 102 A. 2d 734 (1954), additional criminal safeguards are available to him. The burden of proof is increased, the accused cannot be compelled to testify against himself, he cannot be put in double jeopardy, and, except when a contempt may be dealt with summarily, the panoply of fundamental due process rights comes into play.[12]

The Court also pointed out the test for determining whether the proceedings were civil:

> "The five factors which generally point to a civil contempt are:

---

"11. The right to a jury trial is guaranteed if the offense is serious, *i.e.*, may be punished by an imprisonment of six months or more. *Bloom v. Illinois*, 391 U. S. 194, 20 L.Ed.2d 522, 88 S. Ct. 1477 (1968).

"12. These include not only the right to notice, and the opportunity to be heard but also the right to counsel and with the possibility of imprisonment an indigent has the right to have an attorney appointed for him. *Argersinger v. Hamlin*, 401 U. S. 908, 32 L.Ed.2d 530, 92 S. Ct. 2006 (1972). *Argersinger* broadens the requirements for assignment of counsel under Maryland Rule 719 b 2 a, but there must still be compliance with the other mandate of that rule. *See also* the definition of 'Serious Crime' in Maryland Code (1957, 1971 Repl. Vol., 1972 Cum. Supp.), Art. 27A, § 2 (h) (2)."

' (1) the complainant is usually a private person as opposed to the State; (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilful or contumelious that the court is impelled to act on its own motion.' " 267 Md. at 729-30.

With this brief discussion of the law we turn to the facts of the instant case. On March 20, 1973, Judge Walter R. Haile, in the Circuit Court for Baltimore County, entered a decree of divorce for Audrey Hare against David Hare, the appellant herein. The decree awarded the custody of the sons of the parties to the husband and the daughters to the wife; and further, the decree provided specific visitation rights for the husband as to two of the daughters, in the following language:

"ADJUDGED, ORDERED AND DECREED that subject to the further orders of this court David Hare shall * * * have Ann Marie Hare and Sandra Hare with him on Saturday following the date of this order from noon until six o'clock p.m. on Sunday (the following day), and shall at that time return them to their mother; and that David Hare shall have Ann Marie Hare and Sandra Hare with him on the following Saturday from eight o'clock a.m. until nine o'clock a.m. on Sunday (the following day) and shall at that time return them to their mother, and so continuing alternately each week-end; . . ."

On August 2, 1973, a "Petition for Attachment for Contempt and for Mental Examination" of David Hare was filed, upon which the court entered a show cause order. It

was alleged therein: that on July 25th the appellant was released from jail where he had been confined for a similar prior contempt in these same proceedings; that he immediately gave a statement to the press, a copy of which was attached, that he had no intention of complying with the court order directing that he return the two daughters involved to the mother on Sundays after his visit was to be concluded; and, that on Saturday, July 28th, the respondent picked up the two minor children, Sandra Hare and Ann Marie Hare and, contrary to the decree, failed and refused to return the children to the custody of the mother. The petition also recited that this and prior unusual conduct indicated that the accused should be subjected to a psychiatric evaluation, and that he should be cited for contempt. On the 8th of August, the accused filed an answer to the petition for contempt. A hearing was held on October 11 and 12, 1973. At the hearing, in a discussion involving the appellant's demand for a jury trial, counsel for Mrs. Hare stated that they were requesting the enforcement of an equity decree and that there was no criminal question involved. It developed that both children had previously been returned to Mrs. Hare. Although it is apparent the civil contempt had already been purged, the trial judge found Mr. Hare in contempt and directed that he be subjected to a psychiatric examination. The record shows that the appellant was examined by a psychiatrist and found to be sane. The appellant appeals from that portion of the order which found him to be in contempt and directed that he be confined until he purged himself of the contempt.

It would seem beyond peradventure that the facts as stated would justify criminal sanctions, but it is equally clear the proceedings actually instituted were civil and not criminal. Not only because counsel for Mrs. Hare, who filed the petition, specifically stated that the purpose was not criminal, but because the case meets the test for civil contempt as set out in *State v. Roll and Scholl, supra,* in that: the complainant was a private person; the contempt proceeding was entitled in the original action; the purpose was to afford relief to a private party; and the relief was for

the benefit of that party. Although the acts complained of were sufficiently wilful and contemptuous that the court would have been justified in instituting criminal proceedings, the fact remains that it did not do so. Indeed, it imposed a civil remedy, *i.e.* confinement until the contempt is purged, rather than the punitive relief of a determinate jail sentence. The form of punishment does not determine the nature of the proceedings, but rather, from the nature of the proceedings flows the manner of punishment. As pointed out in *State v. Roll and Scholl, supra* at 730:

> "If it is a civil contempt the sanction is coercive and must allow for purging, *McDaniel v. McDaniel,* 256 Md. 684, 262 A. 2d 52 (1970); but if it is criminal, it is punitive and must be determinate. However, conditions may be attached to the determinate sentence which provide for an earlier termination."

We think the civil contempt proceedings should have been terminated when it was determined that both children had already been returned to Mrs. Hare, consequently, the appellant should not have been subjected to confinement. If the court, or others, had desired to pursue criminal remedies, it would have been necessary to institute new proceedings, in accordance with Md. Rules P1-5.

Appellant also raises a number of other objections to the proceedings. We do not reach them under our disposition of the case.

*Order of contempt reversed.*
*Appellant to pay the costs.*