552 A.2d 29

Cheryl JOHNSON

v.

**G.D. SEARLE & COMPANY et al.**

Eileen M. FERCH

v.

**G.D. SEARLE & COMPANY et al.**

**No. 19, Sept. Term, 1988.**

Court of Appeals of Maryland.

Jan. 18, 1989.

522

H. Robert Erwin, Jr. (Pretl & Erwin, P.A., both on brief), Baltimore, for appellants.

James L. Shea (Jill E. Rappaport, Terri L. Turner, Venable, Baetjer & Howard, all on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

These appeals involve Md.Code (1974, 1984 Repl.Vol.), § 6–104(a) of the Courts and Judicial Proceedings Article (CJ) which provides:

> "If a court finds that in the interest of substantial justice an action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions it considers just."

We shall hold that a circuit court abuses its discretion by unconditionally dismissing actions on the ground of forum non conveniens when the statute of limitations has likely run in the alternative forum.

Presented are two appeals which have been consolidated for briefing and argument. Both cases are product liability, personal injury actions involving an intrauterine contraceptive, the Copper–7 (Cu–7), manufactured and distributed by the appellees, G.D. Searle & Company and Searle Pharmaceuticals, Inc. (collectively, Searle). In each case the plaintiff alleges that her use of the Cu–7 caused pelvic inflammatory disease which eventually required a complete abdominal hysterectomy and bilateral salpingo-oophorectomy. Since March 1971 the United States Food and Drug Administration has classified copper-bearing IUDs, such as the Cu–7, as prescription drugs. The FDA approved the Cu–7 in February 1974 following fourteen months of study.

Appellant, Cheryl Johnson, is a resident of Chicago, Illinois. In 1975 she had acquired her first Cu–7 in Detroit, Michigan. It was removed by her physician in August

1978, and in September 1978 a second Cu–7 was prescribed and inserted. Her physician removed this second Cu–7 in January 1980 after Ms. Johnson had developed symptoms. She was treated from time to time at the University of Illinois Hospital where, on October 28, 1980, she underwent the hysterectomy. Ms. Johnson's suit against Searle was filed in the Circuit Court for Baltimore City on July 31, 1987.

Appellant, Eileen Ferch, is also a resident of Illinois. Her physician prescribed and inserted a Cu–7 in 1976. Ms. Ferch's symptoms developed in 1978. She was treated at times in 1979 at hospitals in Illinois. She underwent her hysterectomy in October 1979 at a hospital in Parkridge, Illinois. Her action against Searle was filed in the Circuit Court for Baltimore City on August 4, 1987.

The appellee corporations are not incorporated under the laws of Maryland and Searle's principal office is in Skokie, Illinois. Searle maintains no office in Maryland but sells its products in this State through sales representatives. Searle has not questioned Maryland's exercise of in personam jurisdiction over it.[1] On the same day that Searle answered the complaints, however, it moved that each be dismissed under CJ § 6–104(a) because each action should be heard in an Illinois forum.

In each case the circuit court entered the following judgment:

"Upon consideration of the Motion to Dismiss on the Basis of *Forum Non Conveniens* and the memoranda

---

1. CJ § 6–103(b) provides in part:
   "A court may exercise personal jurisdiction over a person, who directly or by an° agent:
   . . . .
   (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]"

and arguments by the parties, it is ... ORDERED that this action is dismissed, with plaintiff to pay costs." Each plaintiff appealed to the Court of Special Appeals. We issued the writ of certiorari on our own motion prior to consideration of the appeals by the intermediate appellate court.

Restatement (Second) of Conflict of Laws § 84 (1971) describes forum non conveniens as the principle whereby "[a] state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action[,] provided that a more appropriate forum is available to the plaintiff." At the time of the American Revolution the common law of England solved the question of the appropriate place for trial of an action by deciding whether it was local or transitory. Local actions are those based on facts which could have happened only in one place whereas actions based on facts which might have happened anywhere are transitory. "Local actions can be tried only where they arise; transitory actions, in whatever court has jurisdiction over the defendant or his property." Foster, *Place of Trial in Civil Actions*, 43 Harv.L.Rev. 1217, 1217 (1930). Professor, and later Judge, Robert Braucher has traced the origins of forum non conveniens to Nineteenth–Century Scotland. Braucher, *The Inconvenient Federal Forum*, 60 Harv.L.Rev. 908, 909 (1947). Paxton Blair, a Wall Street lawyer,[2] presented the thesis that the doctrine was part of the common law inherent power of American courts which had been applying the principle without using its Latin label. Blair, *The Doctrine of Forum Non Conveniens in Anglo–American Law*, 29 Colum.L.Rev. 1, 2 (1929).

The United States Supreme Court held that United States District Courts had inherent power to dismiss pursuant to the doctrine in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and its companion case, *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 67

---

**2.** Note, *Forum Non Conveniens in the Absence of An Alternative Forum*, 86 Colum.L.Rev. 1000, 1002 & n. 11 (1986).

S.Ct. 828, 91 L.Ed. 1067 (1947). Whether a federal court should "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute," *Gulf Oil,* 330 U.S. at 507, 67 S.Ct. at 842, was to be determined by weighing public and private interest factors. "Wisely," courts have not attempted "to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts[.]" *Id.* at 508, 67 S.Ct. at 843. Private interest factors mentioned by the Court included "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses[.]" *Id.* Describing public interest factors the Court said:

"Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

*Id.* at 508–09, 67 S.Ct. at 843. On appellate review of the dismissal of a complaint on forum non conveniens grounds the test is whether the trial court "exceed[ed] its powers or the bounds of its discretion[.]" *Id.* at 512, 67 S.Ct. at 844.

The importance of common law forum non conveniens in the federal courts was somewhat diminished in the year following *Gulf Oil* by the enactment of present Title 28 U.S.C. § 1404(a) (1982) by Pub.L. No. 80–773, § 1404(a), 62 Stat. 869, 937 (1948). That statute provides that "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

■ Although the doctrine of forum non conveniens and § 1404(a) have similar conceptual roots, they are not identical.

"The transfer under sec. 1404(a) is not a transfer or a surrender of a case to another judicial system. It is but a change of venue to another courtroom of the same judicial system. Under a sec. 1404(a) transfer, the transferee court is obliged to follow the law of the state that would have been applied if there had been no change of venue. Ehrenzweig and Louisell, [*Jurisdiction in a Nutshell*], p. 17 [ (2d ed. 1968) ], and *Van Dusen v. Barrack* (1964), 376 U.S. 612, 639, 84 S.Ct. 805 [820], 11 L.Ed.2d 945. Although sec. 1404(a) partakes of some of the elements of *forum non conveniens*, it is a statutory device distinct from that doctrine. *Forum non conveniens* can be applied by federal courts independently of any statutory authorization."

*Littmann v. Littmann*, 57 Wis.2d 238, 249, 203 N.W.2d 901, 907 (1973). The common law doctrine, however, retains vitality in the federal courts "primarily when the 'more convenient forum' is [that of] a foreign country, rather than another federal district." *Grodinsky v. Fairchild Indus.*, 507 F.Supp. 1245, 1248 (D.Md.1981). The doctrine is also applicable to federal courts where the only alternative forum is a state court. *See Poe v. Marquette Cement Mfg. Co.*, 376 F.Supp. 1054, 1060 (D.Md.1974).

■ Inasmuch as the courts of limited jurisdiction of the federal sovereign have inherent power to dismiss by applying common law forum non conveniens, that power necessarily also lies with the Maryland trial courts of general jurisdiction, the circuit courts. Thus, CJ § 6–104(a) confirms the existence of an inherent power and makes clear

that it may be applied in relation to the broad standard of "the interest of substantial justice."

Section 6-104(a) was originally enacted as part of the "Long Arm" statute. *See* Acts of 1964, Ch. 95, enacting former Art. 75, § 98; Auerbach, *The "Long Arm" Comes to Maryland,* 26 Md.L.Rev. 13 (1966). The text of CJ § 6-104(a) is in substance, and is nearly verbatim, § 1.05 of the Uniform Interstate and International Procedure Act, 13 U.L.A. 355, 377 (1986) (the Model Act) which was approved by the National Conference of Commissioners on Uniform State Laws, and by the American Bar Association, in 1962. *Cf. Groom v. Margulies,* 257 Md. 691, 702, 265 A.2d 249, 254 (1970) (predecessor of present CJ § 6-103 is based on the Model Act). After *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) had expanded the constitutionally permissible bases for exercising personal jurisdiction, the General Assembly fully occupied the expanded area by enactment of the "Long Arm" statute, and considered it desirable to have a safety valve for those cases in which exercise of the enlarged in personam jurisdiction would not be "in the interest of substantial justice."

Searle contends that the circuit court did not abuse its discretion by dismissing the instant actions because an Illinois court would clearly be the more convenient forum. Both plaintiffs reside there, the medical witnesses respecting plaintiffs' injuries reside there, Searle has its principal office there, and Searle's records relating to the development and testing of the product are there. Applying public interest factors, Searle argues that Illinois has the greater interest in vindicating any rights of its citizens arising out of a tort committed in Illinois and that, because the substantive law of Illinois would govern liability issues, it is more appropriate for an Illinois court to apply that state's law.

Appellants point out that the law firm which represents each of them is based in Baltimore and that the law firm which is defending Searle not only in the instant actions but also in other Cu-7 cases in other states, is also based in Baltimore. Appellants say that FDA records relating to the

testing of the Cu–7 are at the FDA headquarters in Maryland, although Searle disputes how conveniently any information can be obtained from the FDA. Apparently based on experience in other Cu–7 litigation, appellants' counsel submit that the liability aspects of the instant actions have no dominant connection with any particular state. The Cu–7 was tested in a number of states, and the expert witnesses anticipated to testify for one side or the other reside in various places throughout the United States and are prepared to travel to wherever a Cu–7 case is tried.

The convenience of access by counsel to the forum has not been a factor to which courts have given appreciable weight in deciding whether to dismiss for forum non conveniens. *See Anderson v. Great Lakes Dredge & Dock Co.,* 411 Mich. 619, 309 N.W.2d 539 (1981); *Besse v. Missouri Pacific R.R.,* 721 S.W.2d 740 (Mo.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). If the instant cases involved only the weighing of factors bearing on convenience, without presenting any issue of availability, we assume that it would have been within the discretion of the circuit court unconditionally to dismiss the actions because Illinois was the more convenient forum. But this case is not really about convenience. It is about limitations.

The parties recognize that limitations have probably run against the appellants' claims under Illinois law which allows two years after discovery within which to sue.[3] *See* Ill.Ann.Stat. ch. 110, para. 13–213 (Smith–Hurd 1987). The appellants anticipate that a Maryland forum would apply the Maryland statute of limitations, *see Doughty v. Prettyman,* 219 Md. 83, 88, 148 A.2d 438, 440 (1959), which allows three years from discovery. *See Pennwalt Corp. v. Nasios,* 314 Md. 433, 550 A.2d 1155 (1988). Appellants submit that the circuit court abused its discretion by dismissing outright, without, as appellants had asked the circuit court to do, conditioning the dismissal on Searle's waiver of

---

**3.** At oral argument in this Court, counsel for the appellants represented unequivocally that limitations had run in Illinois.

limitations on an action in Illinois. When counsel for Searle was pressed at oral argument in this Court for a position with respect to conditional dismissal, he replied:

"I have not had a position from my client so I guess my position to your Honor is ... if your ruling is that we must waive limitations in order to go to Illinois, we'll stay here in Maryland. That's the position that I have at this point."

Thus, the issue is whether the circuit court should have conditioned its order.

■ In order to apply a forum non conveniens analysis there must be an alternative forum which is available for the litigation. Comment c to the Restatement, *supra*, § 84 explains the concept of an available alternative forum, saying:

"The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed unless a suitable alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state."

The comment by the Commissioners on Uniform State Laws to § 1.05 of the Model Act explains that that counterpart to CJ § 6–104(a) was derived from former Wis.Stat. Ann., tit. 25, § 262.19 (West Supp.1962) (now Wis.Stat.Ann. § 801.63 (West 1977)). The comment points out that "[p]ossible conditions for granting the stay suggested in the Wisconsin provision are consent of the parties to suit in the alternative forum and waiver of reliance upon statutes of limitations."

Further, the weight of authority applying common law forum non conveniens utilizes conditional dismissals where limitations might bar relief in the more convenient forum. Judge James R. Miller, Jr. of the United States District Court for the District of Maryland ordered a conditional dismissal in a case brought by and on behalf of Canadian citizens against the Maryland-based manufacturer of an airplane which had crashed in the Province of Quebec. He said that "[t]o insure that plaintiffs are not left without a remedy, dismissals in cases such as this are customarily conditioned upon the defendant's consent to jurisdiction in the alternative forum and waiver of any statute of limitations defense that has arisen since the commencement of the original action." *Grodinsky*, 507 F.Supp. at 1251.

The custom referred to by Judge Miller is evidenced by cases in which the court which orders a forum non conveniens dismissal does so conditioned on a waiver of the statute of limitations. In some cases the terms of the order limit the condition to limitations which have run following institution of the action in the inconvenient forum. Those terms preserve to the defendant any limitations defense in the convenient forum which was available there prior to suit in the inconvenient forum. *See Farmanfarmaian v. Gulf Oil Corp.*, 437 F.Supp. 910 (S.D.N.Y.1977), *aff'd*, 588 F.2d 880 (2d Cir.1978); *Kelce v. Touche Ross & Co.*, 37 Colo.App. 352, 549 P.2d 415, *rev'd on other grounds*, 192 Colo. 202, 557 P.2d 374 (1976); *MacLeod v. MacLeod*, 383 A.2d 39 (Me.1978). In other cases the order of dismissal is conditioned on a waiver of limitations which is unlimited. *See Wieser v. Missouri Pac. R.R.*, 98 Ill.2d 359, 74 Ill.Dec. 596, 456 N.E.2d 98 (1983); *Ellis v. Outboard Marine Corp.*, 132 Ill.App.3d 532, 87 Ill.Dec. 875, 478 N.E.2d 14 (1985); *McLeod v. Lovelace*, 117 A.D.2d 989, 499 N.Y.S.2d 290 (1986); *Varkonyi v. S.A. Empresa De Viacao Airea Rio Grandense*, 27 A.D.2d 731, 277 N.Y.S.2d 577 (1967), *rev'd on other grounds*, 22 N.Y.2d 333, 292 N.Y.S.2d 670, 239 N.E.2d 542 (1968); *State ex rel. S. Pac. Transp. Co. v.*

*Frost,* 102 N.M. 369, 695 P.2d 1318 (1985).[4]

The opinion of the Appellate Division of the Supreme Court of New York in the *Varkonyi* case reflects that the unlimited conditional waiver which that court ordered was prompted by the possibility that the plaintiff had been lulled into a false sense of security while the action was pending in the inconvenient forum. The remaining cases, cited above, in which the condition was limited, do not indicate that the court considered that the terms of the order marked the extent of the court's power. In all likelihood, the limit on the condition marked the extent of the court's concern over limitations under the facts of the particular case. Similarly, the cited cases in which the condition was unlimited do not reflect a conscious determination to meet a recognized problem involving limitations which may have run in the alternative forum even before the plaintiff filed suit in the inconvenient forum.

The custom referred to by Judge Miller is also illustrated by cases in which the defendant who seeks a forum non conveniens dismissal waives any defense of limitations in the proposed alternative forum in order to remove that obstacle to the availability of the alternative forum and to enhance the argument for dismissal. *See Holmes v. Syntex Laboratories, Inc.,* 156 Cal.App.3d 372, 202 Cal.Rptr. 773 (1984); *Miller v. United Technologies Corp.,* 40 Conn.Supp. 457, 515 A.2d 390 (1986); *Anderson v. Great Lakes Dredge & Dock Co.,* 411 Mich. 619, 309 N.W.2d 539 (1981); *Daugherty v. Inland Tugs Co.,* 240 Pa.Super. 527, 359 A.2d 465 (1976); and *Norman v. Norfolk & W. Ry. Co.,* 228 Pa.Super. 319, 323 A.2d 850 (1974).

Searle forthrightly argues that the instant actions should be unconditionally dismissed because Illinois was the more convenient forum, even if limitations have run in Illinois. The defendant submits that

---

4. *Frost* involved a change of venue within the judicial system of the State of New Mexico. The opinion does not reflect why any waiver of limitations was required.

"appellants want to use their own inaction as a shield, arguing that their self-induced predicament in their home state precludes dismissals of cases filed in this completely inconvenient and improper forum. Maryland's courts should not countenance such an imposition on their jurisdiction."

Brief of Appellees at 30. Searle's argument finds forceful expression in the dissenting opinion of Justice Anderson of the Supreme Court of Mississippi in *Shewbrooks v. A.C. and S., Inc.*, 529 So.2d 557, 574 (Miss.1988). The plaintiff had been attracted to Mississippi by its six-year statute of limitations, after limitations had run in the plaintiff's home state. The judge said:

"[T]he doctrine [that an unlimited waiver of limitations is required] rests on the tacit premise that if a plaintiff allows his action to die in his own state, Mississippi has a positive duty to resuscitate it for him. I know of no such duty, nor can I perceive any sound reasons for declaring it. On the contrary, I think it is high time somebody stood up and made some comments on the emperor's wardrobe. Now I find that at least one of our trial judges has done just that, and has been knocked on the head for his trouble."

*Id.* at 575.

■ The Maryland statutes do not reflect any policy against use of the Maryland courts for actions which may have been attracted to this State by a perceived liberality toward plaintiffs in the law of limitations. CJ § 6–103(b)(4) specifically contemplates entertaining actions for tortious injury which occurred outside of Maryland, whether the plaintiff is or is not a Maryland resident. The present statute maintains the same philosophy expressed by one of its legal forbearers, Md.Code (1957, 1966 Repl.Vol.), Art. 23, § 92, dealing with suits against foreign corporations. That statute expressly permitted suits brought by nonresidents on causes of action arising outside of Maryland, subject only to constitutional limitations.[5] Following the enactment

---

5. Md.Code (1957, 1966 Repl. Vol.), Art. 23, § 92 in part provided:

of the "Long Arm" statute in 1964, the special provisions for personal jurisdiction over foreign corporations became unnecessary and were repealed by Ch. 532 of the Acts of 1967.

We have also seen above how CJ § 6–104(a) tracks § 1.05 of the Model Act and that the Model Act was inspired by a Wisconsin statute. Of significance here is that the Wisconsin statute contemplated as a condition of dismissal or stay a waiver of limitations limited to those which had run after institution of the action in the Wisconsin court.[6] The Model Act and the Maryland statute do not incorporate the Wisconsin limitation; rather, they permit waivers or stays unlimited as to the time when limitations might have run in the alternative forum.

A number of recent forum non conveniens decisions have directly addressed the issue now under consideration. All have held that the prerequisite of an available alternative forum requires that the defendant who moves for dismissal waive limitations which had run in the alternative forum before the action was filed in the inconvenient

---

"(a) Every foreign corporation doing intrastate or interstate or foreign business in this State shall be subject to suit in this State by a resident of this State or a person who has a usual place of business in this State, (1) on any cause of action arising out of such business, and (2) on any cause of action arising outside of this State.

(b) Every foreign corporation doing intrastate or interstate or foreign business in this State shall be subject to suit in this State by a nonresident of this State, (1) on any cause of action arising out of such business, and (2) provided that the bringing of such suit in this State is not an undue burden upon the defendant or upon interstate or foreign commerce, on any cause of action arising outside of this State."

6. Wis.Stat.Ann. § 801.63(1) in relevant part provides:

"If a court of this state, on motion of any party, finds that trial of an action pending before it should as a matter of substantial justice be tried in a forum outside this state, the court may ... enter an order to stay further proceedings on the action in this state. A moving party under this subsection must stipulate consent to suit in the alternative forum and waive right to rely on statutes of limitation which may have run in the alternative forum after commencement of the action in this state."

forum. Judge Northrop of the United States District Court for the District of Maryland decided the issue in a number of product liability cases involving another IUD, the Dalkon Shield. *In re Dalkon Shield Litigation*, 581 F.Supp. 135 (D.Md.1983). The manufacturer, who was seeking forum non conveniens dismissals, contended that it should not be required to waive any statute of limitations defenses which existed at the time when any given plaintiff's action was filed in the District of Maryland. The court held that "to the extent an action is barred by the statute of limitations in the proposed alternative forum, then that forum cannot serve as a valid alternative forum for *forum non-conveniens* purposes." *Id.* at 141. In support of its holding the court cited one aspect of the opinion in *Grodinsky*, 507 F.Supp. at 1251, under which the dismissing court would reacquire jurisdiction in the event the defendant's waiver of limitations was ineffective under the Quebec Civil Code. Judge Northrop also relied on *Poe*, 376 F.Supp. 1054, where Judge Harvey refused to dismiss on forum non conveniens grounds for a number of reasons, including, on the authority of *Esso Transp. Co. v. Terminales Maracaibo, C.A.*, 352 F.Supp. 1030 (S.D.N.Y.1972), the defendant's refusal to waive limitations which had run in the alternative forum.

The holding of *In re Dalkon Shield Litigation* was affirmed, *sub nom. Kontoulas v. A.H. Robins Co.*, 745 F.2d 312 (4th Cir.1984). The Fourth Circuit held that the moving defendant had "not met its heavy burden of showing for *each individual action* that no statute of limitations in the plaintiff's home state render[ed] that state ineligible to serve as an alternative forum." *Id.* at 316.

The District of Columbia Court of Appeals in *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8, 13 (D.C. 1986) held that "it is irrelevant that the alternative forum was not available when the plaintiff commenced his action; rather, the policy requires that the alternative forum be

available at the time of dismissal." [7]   We agree with the reasoning of the court.

"The use of conditional dismissal is available to the trial court as a means of checking forum shopping by plaintiffs who, through their own actions or inactions, render an alternative forum unavailable. Dismissal of a case for *forum non conveniens* on the condition that defendant waive any statute of limitations defense in the alternative forum and that the courts of the alternative forum accept such waiver will channel the litigation to the more appropriate forum while helping to ensure that the alternative forum is, indeed, available to the plaintiff.... Moreover, the device obviates the need for extensive inquiry into the alternative forum's law regarding limitation of actions since, if the courts in the alternative forum refuse to accept the defendant's waiver of all statute of limitations defenses, the plaintiff is still ensured a forum by the conditional nature of the dismissal."

*Id.* at 14 (citation and footnote omitted).

The Supreme Court of Mississippi has flatly held that "the doctrine of forum non conveniens will never be applied ... to dismiss a case if it is barred elsewhere by a statute of limitations, unless or until the defendant is willing to stipulate that he will waive the statute of limitation defense." *Shewbrooks,* 529 So.2d at 562. That court's re-

---

7. The District of Columbia court cited *Veba–Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245–49 (5th Cir.1983) and *Schertenleib v. Traum,* 589 F.2d 1156, 1161, 1164 (2d Cir.1978). Those cases deal with the analogous problem of personal jurisdiction over the moving defendant in the alternative forum. *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) had held that a transfer under Title 28 U.S.C. § 1404(a) could not be based on a waiver by the defendant of jurisdictional defects in the proposed transferee forum because that forum would not be one in which the action "might have been brought." The cited cases from the Second and Fifth Circuits emphasize the difference between transfer and forum non conveniens. They hold that jurisdictional availability of the alternative forum is determined as of the time the motion for a forum non conveniens dismissal is decided, and not as of the time suit was instituted in the allegedly inconvenient forum.

search led it to conclude that "[i]n a suit between United States citizens, no court has ever applied the doctrine of forum non conveniens to dismiss a case when there was no other forum available to the plaintiff." *Id.* at 561. Searle has cited no authority to the contrary and our research has disclosed none.

Searle urges that we follow the rationale of *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). There the Court approved a forum non conveniens dismissal by the Middle District of Pennsylvania because Scotland provided the more appropriate forum for the trial of wrongful death actions arising out of an airplane crash in Scotland. The Third Circuit had reinstated the actions because Scottish law does not recognize strict liability in tort, permits wrongful death actions only when brought by a decedent's relatives, and is not as favorable to plaintiffs concerning damages as the law of Pennsylvania. The Supreme Court concluded that the Third Circuit erred by giving significant weight to the unfavorable change in law resulting from the dismissal. Searle would have us hold that the bar of limitations in Illinois is no more significant than the unfavorable differences in law presented in *Piper Aircraft*. The Court in *Piper Aircraft*, however, also pointed out that "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight[.]" 454 U.S. at 254, 102 S.Ct. at 265. In the instant cases the absolute bar of limitations would leave the plaintiffs without remedy in Illinois.

In sum, CJ § 6–104(a) controls forum shopping by plaintiffs by permitting the dismissal of "an action [which] should be heard in another forum" if dismissal, which may be conditional, is "in the interest of substantial justice." It is not in the interest of substantial justice, and indeed, it strikes us as anomalous, if not disingenuous, to request dismissal of an action on the ground that it should be heard in another forum when the action will likely never be heard in the other forum because it is barred by limitations there.

Accordingly, we conclude that the circuit court abused its discretion by unconditionally dismissing the instant actions. We shall vacate the judgments below and remand these actions to the Circuit Court for Baltimore City for the entry of an order dismissing the actions. The dismissals shall be on the condition that the defendants file with the circuit court waivers of limitations under the law of Illinois. These waivers shall be approved by the circuit court and filed within a reasonable time to be fixed by the circuit court after opportunity for the plaintiffs to be heard. Absent such waivers, the motions for forum non conveniens dismissal shall be denied. The waivers may be conditioned on the plaintiffs' filing suit in Illinois within a reasonable time to be fixed by the court. The order of dismissal shall further provide that, if the waivers are finally determined by the courts of Illinois to be ineffective, these actions may be reinstituted in the Circuit Court for Baltimore City within a time after that final determination to be fixed by the circuit court.

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED AND CASES REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS OF THESE APPEALS TO BE PAID BY THE APPELLEES.

ELDRIDGE, Judge, concurring in part and dissenting in part:

I agree with this Court's decision insofar as it vacates the judgments below. Furthermore, I fully concur with the Court's opinion except for part of the final paragraph. I would not at this stage of the case, however, again give the defendants the option of dismissals conditioned upon waivers of limitations under Illinois law. The defendants previously in the circuit court had the opportunity to agree to this option, and they were not interested. At oral argument in this Court, counsel for the defendants made it clear that the defendants would rather "stay in Maryland" than "waive limitations in order to go to Illinois." The Court

correctly states that "this case is not really about convenience. It is about limitations."

As the defendants have taken the position that they will not agree to conditional dismissals, and as there has been enough delay in this matter, I would reverse and remand for trial in the Circuit Court for Baltimore City.