701 A.2d 1199

**Clifford Todd SOLOMON**

v.

**Barbara Kaplan SOLOMON.**

No. 1856, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Oct. 31, 1997.

98

Ann M. Turnbull (Lauri M. Moylan and Turnbull, Wase, & Lyons, P.A., on the brief), Towson, for appellant.

William M. Ferris (Krause & Ferris, on the brief), Annapolis, for appellee.

Argued before DAVIS and SONNER, JJ., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

DAVIS, Judge.

On September 19, 1996, a hearing was held in the Circuit Court for Anne Arundel County on a Complaint to Modify Visitation and Petition for Contempt filed by appellant/cross-appellee Clifford Todd Solomon (Father) and a Motion to Dismiss filed by appellee/cross-appellant Barbara Kaplan Solomon (Mother). On October 11, 1996, the Circuit Court for Anne Arundel County granted Mother's Motion to Dismiss Father's Complaint to Modify Visitation with the parties' son, Jacob. Although the court concluded in its memorandum accompanying its order that it had subject-matter jurisdiction over custody and visitation of Jacob, it declined to exercise its jurisdiction. The circuit court decided that the State of New York is the most convenient forum in this case and dismissed Father's complaint.

By Supplemental Order dated October 24, 1996, the court clarified its Memorandum Opinion and Order, stating that only Father's Complaint to Modify Visitation was dismissed and that the ruling on his Petition for Contempt is the subject of another separate order. By another order dated October 24, 1996, the court found Mother in contempt for failing to allow visitation in accordance with the terms of the parties' Voluntary Separation and Property Settlement Agreement (Agreement). In addition, the court ordered Mother to pay $1,912 as contribution towards counsel fees incurred by Father. Father filed a Notice of Appeal from the Order of October 11, 1996 and Supplemental Order of October 24, 1996 and a Motion for Stay of Order on October 25, 1996. By Order dated November 19, 1996, the court stayed its October 11, 1996 order

pending this appeal. On November 20, 1996, Mother filed a Notice of Cross–Appeal from the October 24, 1996 Order in which she was found in contempt and ordered to pay counsel fees. Father presents the following issues for our review, which we restate below:

I. Whether the trial court committed reversible error when it applied the wrong standard in declining to exercise jurisdiction.

II. In the alternative, whether the trial court erred when it found that New York is the most convenient forum, without evaluating the relevance of the evidence to the issues involved.

In addition, Mother's cross-appeal presents the following question, which we restate below:

III. Did the Circuit Court for Anne Arundel County have jurisdiction to find appellee in contempt of court where the child visitation orders at issue were those of the Circuit Court for Baltimore City, rather than the Circuit Court for Anne Arundel County?

## FACTS

The parties' child, Jacob, was born in Maryland on October 17, 1989. In July 1990, the parties moved to New York so that Father could complete a one-year fellowship at a hospital in Manhattan. Following Father's completion of his fellowship, the parties moved to Switzerland in July 1991, where Father began an apprenticeship at the University Hospital in Zurich. Throughout this period of time, the parties maintained ownership in a condominium in Maryland and Mother testified that she expected that the family would eventually return to Maryland so that Father could complete his residency.

In December 1991, Mother and Jacob traveled to New York from Switzerland to visit family and friends. Father declined to go on the trip. In January of 1992, Father commenced an action for divorce in the Circuit Court for Baltimore City. Mother and Jacob did not return to Switzerland and, for the

next ten months, they lived with Jacob's maternal grandmother in Rosalyn Harbor, New York. On January 23, 1992, Mother filed an action for divorce in New York, but the action was dismissed when the New York court determined that it lacked jurisdiction.

On June 30, 1993, the Circuit Court for Baltimore City entered a Judgment of Absolute Divorce, which incorporated a Separation Agreement that the parties had executed. The Agreement granted Mother primary physical custody of Jacob and granted Father, *inter alia*, three weeks visitation in the summer and two weekends a month, one weekend in Maryland and one weekend in New York. Since the parties' Judgment of Absolute Divorce, they have appeared before the Circuit Court for Baltimore City twice for hearings pertaining to Mother's breach of the parties' Agreement. Following a hearing on January 21, 1994, the parties were able to reach an agreement. At the second hearing on November 10, 1994, the court found Mother in contempt and ordered her to contribute to Father's counsel fees. Then, in May 1994, Mother filed a request in the Supreme Court of New York, County of New York, to modify support and visitation, but the court denied Mother's request, deferring to the Maryland court's jurisdiction.

On March 25, 1996, Father filed in the Circuit Court for Anne Arundel County a Complaint to Modify Visitation, asking the court to grant him, *inter alia*, visitation with Jacob for the whole summer. In addition, Father filed a Petition for Contempt on May 23, 1996 and on July 5, 1996, alleging that Mother repeatedly breached the Agreement by denying Father phone contact and visitation. On May 23, 1996, Mother filed in the Family Court of New York a Petition for Modification of a Judgment of Another Court, requesting the court to modify the June 30, 1993 Judgment of Absolute Divorce of the Circuit Court of Baltimore City. On June 26, 1996, the Family Court of New York stated that it would stay the action pending the resolution of this case in Maryland.

On June 3, 1996, Mother filed a Motion to Dismiss Father's Complaint to Modify Visitation, alleging that the Circuit Court for Anne Arundel County was "an inconvenient forum to make custody and visitation determinations and that the Family Court of the State of New York, County of New York is a more appropriate forum." Father filed an opposition to the motion on June 12, 1996. On September 19, 1996, a hearing was held in the Circuit Court for Anne Arundel County on the Motion to Dismiss for lack of subject-matter jurisdiction and on the Petition for Contempt.

At the hearing, the parties testified to the following facts. Father currently resides in Severna Park, Maryland with his wife Bernadette, and he contends that he has lived continuously in Maryland, with the exception of his one-year fellowship in New York and stay in Switzerland. Jacob visits Father in Maryland one weekend a month, three weeks during the summer, and one week during the rest of the year, as well as alternating holidays. Jacob's paternal grandparents live in Maryland.

Mother and Jacob currently reside in New York City where Jacob attends school. At the time of the trial, Jacob was in the first grade. Mother notes that Jacob's teachers, rabbi and temple, doctors, and dentist are all in New York City. In addition, Jacob attends a children of divorce group in New York City and his maternal relatives are all in New York. Mother testified that Jacob's maternal grandmother sees Jacob three to four times a week. Jacob also has many friends in New York City with whom he interacts on a regular basis.

By Memorandum Opinion and Order dated October 11, 1996, the trial court found that it had jurisdiction over visitation of Jacob because all of the prerequisites of F.L. § 9–302(a) were satisfied. The court, however, stated that "it may decline, in its discretion, to exercise its jurisdiction if it finds that Maryland is an inconvenient forum, pursuant to Family Law Article § 9–207." After considering several factors set out in F.L. § 9–207, the court concluded that the State of New York "is the most convenient forum in this case" and declined

jurisdiction. In addition, the court found that venue was proper for it to decide the Petition for Contempt.

In a Supplemental Order filed October 24, 1996, the court clarified its October 11, 1996 Order, and stated that Father's Complaint to Modify Visitation is dismissed and that its ruling on the Petition for Contempt would be the subject of a separate order. In a separate order filed on October 24, 1996, the court found Mother in contempt and ordered her to pay $1,912 as a contribution towards counsel fees. Father filed a timely appeal, and Mother filed a timely cross-appeal.

## DISCUSSION

The trial court found that it had jurisdiction, pursuant to F.L. § 9–302(a), which provides:

(a) *Authority of Court.*—An equity court has jurisdiction over custody and visitation of a child who is removed from this State by a parent of the child, if:

(1) the parents are separated or divorced and this State was:

(i) the marital domicile of the parents; or

(ii) the domicile in which the marriage contract was last performed;

(2) 1 of the parents was a resident of this State when the child was removed and that parent continues to reside in this State; and

(3) the court obtains personal jurisdiction over the parent who removes the child.

The court explained in its October 11, 1996 Memorandum and Order that the prerequisites of F.L. § 9–302(a) were satisfied because "the parties are divorced and this State was their marital domicile." In addition, Father was a resident of Maryland when Mother and Jacob went to New York, and Father continued to reside in Maryland. Finally, the court stated that it had obtained personal jurisdiction over Mother when she entered her appearance in this action.

The court, however, declined to exercise its jurisdiction over Father's Complaint to Modify Visitation, pursuant to F.L. § 9–207, which is part of Maryland's Uniform Child Custody Jurisdiction Act (Uniform Act). According to F.L. § 9–207(a), a "court which has jurisdiction under this subtitle ... may decline to exercise its jurisdiction ... if it finds that it is an inconvenient forum...." Family Law § 9–207(c) lists several factors that the court may take into account when determining whether it is an inconvenient forum. Father contends that the court erred when it considered the factors set forth in F.L. § 9–207(c), because this provision, he argues, is only applicable to subtitle two [1] and not to the court's finding of jurisdiction under F.L. § 9–302(a).

Instead, Father asserts that, if the judge wished to apply the theory of *forum non conveniens,* she should have applied MD.CODE, CTS. & JUD. PROC. § 6–104 (1996 REPL.VOL.) (C.J.). This section provides that a court may dismiss an action if it "finds that in the interest of substantial justice an action should be heard in another forum ..." Father argues according to the Court of Appeals decision in *Johnson v. G.D. Searle & Co.,* 314 Md. 521, 552 A.2d 29 (1989) (quoting the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 84 (1971)), that "substantial injustice" requires the court to decline jurisdiction if it is a *"seriously* inconvenient forum." *Johnson,* 314 Md. at 525, 552 A.2d 29. As such, Father argues that "the inconvenience required under [C.J. § 6–104] is greater than that contemplated by [F.L. § 9–207]," and, therefore, the trial court erred in its analysis.

Alternatively, Father contends that Maryland has jurisdiction pursuant to F.L. § 9–204 and, therefore, the application of F.L. § 9–207 was proper. He contends, however, that the court should have exercised its jurisdiction because it did not find that Maryland was an inconvenient forum pursuant to F.L. § 9–207. Mother refutes appellant's assertions, and in addition, raises an argument on cross-appeal that the Circuit

---

1. The Uniform Act is codified at MD.CODE ANN., FAMILY LAW, Title 9, subtitle 2.

Court for Anne Arundel County did not have jurisdiction to decide whether Mother was in contempt of the orders of the Circuit Court for Baltimore City. We address each of the parties' arguments below.

## I and II

We first address appellant's contention that the trial court erred when it found that it had jurisdiction pursuant to F.L. 9–302 and declined jurisdiction under F.L. § 9–207. Although Father argued below that the court had jurisdiction pursuant to F.L. § 9–204, as well as F.L. § 9–302, the trial court's order does not discuss jurisdiction with regard to the Uniform Act, but declares that it has jurisdiction pursuant to F.L. § 9–302.[2] Father argues that if there is no jurisdiction under the Uniform Act, the court should not have applied F.L. 9–207 when determining whether to decline jurisdiction.

We agree that F.L. § 9–207 has a limited application. It states:

2. Although the prerequisites of F.L. § 9–302 are satisfied, it is unclear whether this section operates to provide the court with jurisdiction. We discussed the interaction and application of F.L. §§ 9–302 and 9–204 in *Rypma v. Stehr*, 68 Md.App. 242, 511 A.2d 527 (1986). In *Rypma*, F.L. § 9–204 did not confer jurisdiction upon the court because none of the four alternative grounds for jurisdiction enumerated in that section could be satisfied. *Id.* at 248, 511 A.2d 527. We concluded, however, that the court could enjoy jurisdiction, under the "unique facts" of the case, if the parties satisfied the prerequisites of F.L. § 9–302.
We framed the question as follows:
When does custody jurisdiction of a Maryland court attach when the Uniform Act does not apply, and when Maryland jurisdiction is unimpeded by the prior or existing competing jurisdiction of another state?
*Id.* at 255, 511 A.2d 527. In a footnote, however, we emphasized the limited nature of our holding. *Id.* at n. 3. Our holding was based on the lack of any evidence of custody proceedings pending in Iowa. We opined that, if proceedings existed in Iowa, "the purposes underlying the Uniform Act would override § 9–302 so that a Maryland court could not claim jurisdiction under the latter statute." *Id.* In the instant case, although a Maryland court is the court of initial decree, New York has stayed proceedings to Modify the Judgment of Another State. In addition, there has not yet been a determination in the instant case of whether the Uniform Act applies.

(a) *Action if this State is inconvenient forum.*—A court which has jurisdiction *under this subtitle* to make an initial decree or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(Emphasis added). In the instant case, the trial court did not determine whether it had jurisdiction under the Uniform Act, F.L. § 9–204, and therefore, it should not have declined jurisdiction in accordance with F.L. § 9–207.

■ Accordingly, we will address whether the trial court had jurisdiction pursuant to F.L. § 9–204, as Father contends on appeal.[3] Section 9–204 provides four alternative grounds for obtaining jurisdiction under the Uniform Act:

(a) *Grounds for jurisdiction.*—A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this State because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this State;

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least 1 contestant, have a significant connection with this State, and (ii) there is

---

**3.** Whether a Maryland court has jurisdiction over custody related matters is one of subject-matter jurisdiction. This has always been so, both before the Uniform Act and after its enactment. *Rypma*, 68 Md.App. at 246 n. 1, 511 A.2d 527. Subject-matter jurisdiction can be raised at any time, including on appeal. *Id.* (citing *Stewart v. State*, 287 Md. 524, 527–28, 413 A.2d 1337 (1980)). In addition, Mother argues that the court did not have jurisdiction pursuant to F.L. § 9–302 and that jurisdiction hinges on F.L. § 9–204. *See supra* n. 2.

available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with items (1), (2), or (3) of this subsection or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

■ Under the facts of the instant case, the pertinent provision is F.L. § 9–204(a)(2). Father has lived in Maryland his whole life, with the exception of the period he studied in New York and in Switzerland. Jacob was born in Maryland and lived in Maryland for eighteen months. Although Jacob has lived in New York since then, he regularly visits Father, Father's wife, with whom he has a close relationship, and his paternal grandparents. According to the Agreement, Jacob spends one weekend a month in Maryland,[4] four weeks throughout the year, and alternating holidays. Over the course of his visits, Jacob has developed many friendships in Maryland.

We conclude that the Circuit Court for Anne Arundel County had subject-matter jurisdiction under the Uniform Act. A circuit court could decline, however, under the Uniform Act, F.L. § 9–204(a)(c), in its discretion, to exercise its jurisdiction if it concludes that Maryland is an inconvenient forum, pursuant to F.L. § 9–207. Considering the factors set forth in

---

**4.** The Agreement provides that Father has visitation with Jacob two weekends a month: one weekend in Maryland and one in New York. Pursuant to the Agreement, when Jacob is older, both visits will occur in Maryland.

F.L. § 9–207(c), the trial court in the case *sub judice* declined to exercise jurisdiction. Section 9–207(c) provides

(c) *Factors in determination.*—In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose, it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and the child's family or with the child and 1 or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum that is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in § 9–202 of this subtitle.

 The trial court stated in its October 11, 1996 Memorandum and Order that, after considering these factors, the most convenient forum is New York. The court found that Jacob's "home state" is New York and that New York has a closer connection with Jacob than Maryland. In addition, the court found that there is substantial evidence concerning Jacob's "present or future care, protection, training, and personal relationships" in New York. The court also noted that Jacob's rabbi, guidance counselor, doctors, teachers, dentist, and maternal relatives are located in New York. The court observed that Jacob interacts with classmates and friends, attends camp, and sees his maternal grandmother three to four times a week.

In light of the court's factual findings, we will not reverse its conclusion that Maryland is an inconvenient forum under F.L. § 9–207. The record supports the court's findings of fact, and therefore, we perceive no abuse of discretion. *See* MD. RULE

8–131 (An appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."); *see also Harris v. Melnick,* 314 Md. 539, 557, 552 A.2d 38 (1989) and *Cronin v. Camilleri,* 101 Md.App. 699, 708, 648 A.2d 694 (1994).

Father presents three arguments to support his assertion that the trial court's analysis under F.L. § 9–207(c) was improper. First, Father argues that when a court is deciding whether to decline jurisdiction, it should make a distinction between continuing jurisdiction and initial jurisdiction. Father argues that there is a strong presumption of continuing jurisdiction that should apply to the analysis under F.L. § 9–207(c). This argument is misplaced. As we discussed *supra,* such a distinction is an important consideration in determining whether a court has jurisdiction. We have already determined, however, that the trial court had jurisdiction. Subsequent to the jurisdiction determination, a trial court, *in its own discretion,* may choose to decline jurisdiction if, pursuant to F.L. § 9–207, it determines that Maryland is an inconvenient forum. Whether the court has continuing jurisdiction is not relevant to the analysis under F.L. § 9–207.

Father's second argument is that "[t]he evidence relevant to a visitation proceeding is often different from the evidence relevant to a custody determination." Father contends that the trial court should have found relevant the witnesses from Maryland, and not Jacob's teachers and doctors in New York. We disagree. The observations and opinions of people who interact with Jacob on a daily basis are certainly relevant to the court's determination of whether it is in Jacob's best interest to increase Father's visitation. The court had the opportunity to observe the evidence and witnesses and determine, pursuant to F.L. § 9–207(c)(2) and (3), "if another state has a closer connection with the child" and "if substantial evidence concerning the child's present or future care ... is more readily available in another state." The court did not err in its analysis.

Finally, Father argues that the trial court erred when it concluded that "New York is the most convenient forum." The language of the statute states that the court may decline to exercise jurisdiction "if it finds that it is an inconvenient forum ... and that a court of another state is a more appropriate forum." Although the trial court did not specifically use the language that "Maryland is an inconvenient forum," it applied the proper analysis in declining to exercise its jurisdiction. The court considered the factors set forth in F.L. § 9–207(c) to determine whether "it is an inconvenient forum." It then concluded that New York was a more convenient forum, and referred to the factors in F.L. § 9–207(c). Consequently, we perceive no reversible error in the trial court's exercise of its discretion and its decision to decline jurisdiction, pursuant to F.L. § 9–207.

## III

Father filed two Petitions for Contempt in the Circuit Court for Anne Arundel County on May 6 and July 5, 1996. In its Order dated October 24, 1996, the court found Mother "in contempt of Court for failing to allow visitation and failing to transport the minor child to and from the train station pursuant to the terms of the parties' Voluntary Separation and Property Settlement Agreement. . . . "

Mother argues on cross-appeal that the Circuit Court for Anne Arundel County did not have jurisdiction to decide whether she was in contempt of the orders of the Circuit Court for Baltimore City. Instead, she argues, Father should have filed the Petition for Contempt in the Circuit Court for Baltimore City. She contends that a constructive civil contempt is not a separate and independent action, but a continuation of the original action. Mother relies on *State v. Roll,* 267 Md. 714, 729, 298 A.2d 867 (1973), *Winter v. Crowley,* 245 Md. 313, 317, 226 A.2d 304 (1967), and *Hare v. Hare,* 21 Md.App. 71, 318 A.2d 234 (1974), as well as the recently adopted MD. RULE 15–206(a) to support her assertions.

The trial court, in the case *sub judice,* relied on C.J. § 6–202(5), which is merely an explication of C.J. § 6–201, entitled "Venue." These sections simply constitute demarcation of the geographical boundaries wherein "a civil action shall be brought ... " and they are not otherwise concerned with the jurisdiction or power of a court to affect the course of a pending action.

Father relies heavily on the language of F.L. § 8–105(a)(2) that provides that "the court may enforce by power of contempt or as an independent contract not superceded by the divorce decree the provisions of the deed, agreement, or settlement that contain language that the deed, agreement, or settlement is incorporated but not merged into a divorce decree." The parties' Judgment of Absolute Divorce, he contends, states that their Agreement, dated June 18, 1993, "is incorporated in the judgment but not merged therein," thereby invoking the provisions of F.L. § 8–105(a)(2).

Father is correct in observing that the Court of Appeals, in *Roll,* 267 Md. at 729, 298 A.2d 867, was primarily concerned with the "frequently hazy and indistinct" line between civil and criminal contempt when it listed the five factors that generally indicate a civil, rather than a criminal, contempt. While the listing of the second of the five factors which generally point to a civil contempt, i.e., that the proceeding is "entitled in the original action and filed as a continuation thereof ...," did not constitute a part of the Court's holding, and the Court, as Father notes, "was not establishing a procedural requirement of civil contempt proceedings," we are not persuaded that the Court's language was inadvertent or that the Court was unaware of the legal implications of that language.

We do not believe, however, that resort to the decision of the Court of Appeals in *Roll* is necessary or particularly helpful in resolving the question of the authority of one circuit court to enforce the order of another circuit court within the State.

The MARYLAND CONSTITUTION provides:

> (a) There shall be a Circuit Court for each County and for Baltimore City. The Circuit Courts shall have and exercise, *in the respective counties, and Baltimore City,* all the power, authority and jurisdiction, original and appellate, which the Circuit Courts of the counties exercised on the effective date of these amendments, and the greater or lesser jurisdiction hereafter prescribed by the law.

MD.CODE ANN., CONST. ART. IV § 20 (1981 REPL.VOL.) (emphasis added). The operative words in this cited provision are "in the respective counties, and Baltimore City." In other words, the circuit courts shall *not* "have and exercise" that power, authority, and jurisdiction in any county in the State other than in "the respective counties," referring to the county in which that circuit court is located.

The ineluctable and pellucid construction of this constitutional mandate is that each of the circuit courts in the counties in Maryland, as well as Baltimore City, operates wholly independent of the others and its judgments may not, without express statutory authority, be enforced by another county. *See Evans v. Zouck,* 172 Md. 12, 14–16, 190 A. 523 (1937). *See also Dorsey v. Omo,* 93 Md. 74, 80, 48 A. 741 (1901).

With the cited section of the MARYLAND CONSTITUTION in mind, we turn to the language of MD. RULE 15–206, entitled "Constructive Civil Contempt,"[5] which reads, in pertinent part:

---

**5.** It should be noted that MD. RULE 15–203, entitled "Summary Punishment, Direct Civil and Criminal Contempt," directs in unequivocal terms that it is the Court "against which a civil or criminal contempt has been committed" that is empowered to conduct the contempt proceedings. Of course, a direct civil contempt presents a more compelling case for the court in which the attempt occurred to hear the proceedings because direct contempt is committed in the presence of the court or so near the court as to interrupt its proceedings. *Roll,* 267 Md. at 731, 298 A.2d 867. While we are mindful that there is a more compelling reason to proceed by way of a summary proceeding when there is a direct contempt thereby implicating the court offended, we believe the language of RULE 15–203 is instructive.

(a) Where Filed.—A proceeding for constructive civil contempt shall be included in the action in which the alleged contempt occurred.

It is beyond cavil that the command of § 15–206 is that one seeking to prosecute a constructive civil contempt must go to "the action" wherein the alleged contempt occurred. MARYLAND RULE 1–202 defines action as "collectively all the steps by which a party seeks to enforce any right in a court or all of the steps of a criminal prosecution."

■ More generally, however, an action is defined as "an ordinary proceeding in a court of justice by which one party prosecutes another or the enforcement or protection of a right, the redress of it or prevention of a wrong, or the punishment of a public offense." BLACK'S LAW DICTIONARY, 6th Ed., 2d Reprint 1990. The particular court wherein the "action" giving rise to the alleged contempt occurred was located in Baltimore City. Indeed, it was the Judgment of Absolute Divorce that incorporated the Agreement, issued on June 30, 1993 by the Circuit Court for Baltimore City, that ordered the visitation schedule and the manner of delivery of the child to and from the train station. Thus, the Circuit Court for Baltimore City should have heard the contempt proceeding.

Father posits that the language of MD. RULE 15–206(a), requiring that a proceeding for constructive civil contempt "shall be included in the action in which the alleged contempt occurred" does not proscribe the filing and enforcement of a contempt proceeding in a circuit court other than that in which the original case was filed. "Action" and "court," urges Father, "are not interchangeable and have different meanings." This is bolstered, according to Father, by the fact that the "only action pending at the time cross-appellee filed his initial petition for contempt on May 6, 1996 was his complaint for modification, which was filed in the Circuit Court for Anne Arundel County on March 25, 1996."

RULE 15–206 employs the mandatory "shall" and refers, not to whether there is an action pending, but rather provides that the proceeding "shall be included in the action in which the alleged contempt occurred." One certainly cannot proceed "in

the action" in a circuit court that did *not* conduct the proceedings wherein the alleged contempt occurred and simultaneously comply with the mandate of RULE 15–206 that the proceeding "shall be included in the action." Thus, conceding that "action" and "court" are not interchangeable and have different meanings, given the context of RULE 15–206, the distinction is of no consequence.

In sum, ART. IV § 20 of the MARYLAND CONSTITUTION authorizes the circuit court of each county and of Baltimore City, in the absence of any express statutory authority to the contrary, to enforce only its own judgments. Specifically, MD. RULES 15–203 and 15–206 require that a proceeding for contempt be "included in the action" and that the court that may mete out punishment is designated as "the court against which a direct civil or criminal contempt has been committed." Accordingly, the Circuit Court for Anne Arundel County erred when it issued its contempt order to punish disobedience of a judgment of the Circuit Court for Baltimore City.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY CITING APPELLEE FOR CONTEMPT VACATED; JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY OTHERWISE AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**